# Exhibit 1

July 12, 2005

Spider-Man Musical

Summary of Material Terms Between LOH, Inc. ("Lender") f/s/o Julie Taymor ("Taymor" or "Director") and Hello Entertainment, LLC ("Hello" or "Producer")

The summary of material terms set forth below, when countersigned by Lender and Hello, outlines material terms upon which the parties have agreed Taymor will direct and collaborate on the creation of a dramatico-musical work for the legitimate stage presently entitled "Spider-Man: A Musical Web" (the "Musical") and grant Hello the right to produce and present the Musical.

The parties acknowledge that Hello entered into an agreement with Marvel Enterprises, Inc. dated March 25, 2004 (the "Marvel Agreement") pursuant to which Hello has acquired the right to cause to be created a stage musical based on certain intellectual property owned by Marvel (including the comic book character known as Spider-Man), which intellectual property is defined in the Marvel Agreement as the "Work".

1) Fee: In consideration for the Lender furnishing the direction and collaboration services of Director for the initial first class production of the Musical on Broadway in New York City or on the West End of London (in either case, the "Initial First Class Production") and any developmental productions prior to the opening of the Initial First Class Production, Hello will pay Lender a non-recoupable total fee of $125,000 (the "Fee").

   Upon the execution of this deal memo, Hello shall pay Lender $25,000 of the Fee ($12,500 of which has already been paid). The additional payments for the remainder of the Fee will be in three equal payments with the payment schedule to be negotiated in good faith between the parties.

2) Net Profit Participation: With respect to each company of the Musical produced or licensed by Hello, Lender will receive 2.5% of 100% of net profits of each such company, if any.

3) Broadway Royalties: Lender shall be entitled to the following royalties from performances of the Broadway production of the Musical:

   a. Royalty as Director: a minimum guaranteed weekly advance (to be negotiated in good faith) against 6.5% of Weekly Operating Profit pre-recoupment increasing to 7.4274% post recoupment.

   b. Royalty as Collaborator: a minimum guaranteed weekly advance (to be negotiated in good faith) against 2.5933% of Weekly Operating Profit pre-recoupment increasing to 2.9633% post recoupment.

   c. Amortization: The above royalty percentages will be subject to any pre-recoupment amortization and reduction schedules as agreed by Lender and all of the other creative parties.

4) Royalties for Other Productions and Right of Lender to Furnish the Services of Director: In the event Hello or any affiliate of Hello or of a controlling party of Hello produces, presents or licenses any first-class production of the Musical outside of Broadway, Lender will be given the first opportunity to furnish the services of Director to direct

same provided she has directed the Initial First Class Production of the Musical. If Taymor directs, Lender shall be entitled to a director royalty for such productions in an amount to be negotiated in good faith taking into account the financial needs of such productions, the prominence of Director, the standards in the theater industry and other relevant circumstances including the venue, provided, however, that Hello may calculate the royalties for any touring production of the Musical on a "company share" basis when Producer is paid on such basis; and provided further that Lender, in relation to authors, shall receive royalty treatment with regard to such productions on a proportionate basis to the royalties received by Lender and the authors on Broadway. Unless an agreement is reached with Lender with respect to such royalty for any performance of the Musical, Producer will have no right to use Director's directorial contribution to the Musical for such performance. Further, Lender must agree to any reductions, deferrals, waivers or other calculations of the foregoing royalties, and of the royalty set forth in paragraph 3. If Lender declines to furnish the services of Director to direct any such additional company referred to above, Producer will be entitled to deduct from the aforesaid royalty payable to Lender, an amount equal to the royalty paid by Producer to any replacement director who actually re-stages such company. The royalty so paid to the replacement director will not reduce Lender's royalty by more than thirty percent (30%).

5) Subsidiary Rights: Per the current verbal agreement of Neil Jordan, Glen Berger and Bono and Edge of U2 (together, "Authors"), 1/7TH of overall author's subsidiary rights participation, net of customary agency commissions and other third party participations, will go to Lender. In addition, Lender shall be entitled to 2.5% of gross retail sales (less only taxes) of any merchandise using any of Taymor's designs that Taymor is specifically hired to create for the Musical (i.e., costume or puppet designs, to the extent that she is a costume or puppet designer). No royalty shall apply, however, to use of the show logo, key art, the design used on the windowcard or the cover of the souvenir book regardless whether such was designed by Taymor.

6) Film: To the extent that Hello has control over same, Hello agrees that it will accord Taymor the right of first refusal to direct a film version of the Musical, subject to her good faith negotiation with the appropriate entities. Hello will also cause Sony and the Authors to agree to the same. Taymor acknowledges and agrees that insofar as she is concerned Sony Entertainment, Inc. shall have a right of first negotiation and last refusal regarding a film adaptation of the Musical.

7) Approvals: Taymor will have the following approvals (not to be unreasonably withheld) with respect to each production of the Musical directed by her, subject also to the approval of Hello, the Authors and Marvel (where applicable):

      (a)    the entire original cast;
      (b)    replacements of the principal members of the cast;
      (c)    the stage manager;
      (d)    the scenic designer and the designs and models for the sets;
      (e)    if Taymor is not engaged as the costumer designer, then the costume designer and the designs for the costumes;
      (f)    if Taymor is not engaged as the puppet designer, then the puppet designer and the puppet designs, if any;
      (g)    the sound designer and the sound designs;
      (h)    the choreographer;
      (i)    the orchestrator and arrangers;

| | |
|---|---|
| (j) | the conductor; |
| (k) | casting agents; |
| (l) | music supervisor; |
| (m) | lighting designer; |
| (n) | assistant director, and all replacements; |
| (o) | Broadway theater; |
| (p) | West End Theater; and |
| (q) | Bookwriter/treatment writer and/or co-bookwriter/co-treatment writer (Glen Berger is hereby approved) . |

Hello also agrees to accord Taymor approval, not to be unreasonably withheld or delayed, with respect to the show logo and master advertising artwork for the Musical.

The parties will enter into a long form agreement which is within the terms allowed under the Marvel Agreement and which incorporates the above stated terms as well as other terms that are found in director/collaborator agreements, including terms regarding billing, fees and/or advances related to the right of first refusal to direct other first class companies, timing of approvals and expenses.

Agreed and acknowledged:

Hello Entertainment, LLC                    LOH, Inc. f/s/o Director/Collaborator

By: _____            By: _____
      Tony Adams                                  Julie Taymor

By: _____
      David L. Garfinkle