# Exhibit 3

*BERGER*
*Syed*

June 22, 2005

Spider-Man Musical

Summary of Material Terms between Glen Berger ("Berger" or "Bookwriter") and Hello Entertainment, LLC ("Hello" or "Producer")

The summary of material terms set forth below, when countersigned by Berger and Hello, outlines material terms upon which the parties have agreed Berger will co-write the treatment and/or book for a dramatico-musical work for the legitimate stage presently entitled "Spider-Man: A Musical Web" (the "Musical") and grant Hello the right to produce and present the Musical.

The parties acknowledge that Hello entered into an agreement with Marvel Enterprises, Inc. dated March 25, 2004 (the "Marvel Agreement") pursuant to which Hello has acquired the right to cause to be created a stage musical based on certain intellectual property owned by Marvel (including the comic book character known as Spider-Man), which intellectual property is defined in the Marvel Agreement as the "Work". Berger hereby acknowledges and agrees that his position as a co-writer of the treatment and/or the book of the Musical is subject to the approvals of both Marvel Enterprises, Inc. ("Marvel") and Bono and the Edge of U2 as set forth below.

1) <u>Treatment and Bookwriter Payments</u>: For the initial option to present the first class production of the Musical on Broadway in New York City or on the West End of London (in either case, the "Initial First Class Production"), and any developmental or tryout productions prior to the deadlines set forth in the Marvel Agreement, as such dates may be extended by Marvel, Hello will pay Berger the following:

    a. <u>Treatment Payment</u>: a non-returnable Ten Thousand Dollars ($10,000) upon delivery of a completed treatment/step outline (the "Treatment") for which Berger shall serve as co-writer (the "Treatment Payment"). The Treatment shall include, without limitation, those elements set forth in the definition of "Basic Treatment" in the Marvel Agreement, which is "the story, basic treatment, overall concept and music-style contained in the Musical (e.g. rock vs. hip-hop), including but not limited to the basic storyline, character descriptions, portrayal of the powers, basic personal traits, physical appearance and the living habitat, environment and setting thereof" and a scene by scene breakdown. The Treatment Payment shall be paid to Berger by Producer regardless of whether Producer elects to utilize Berger's services to make revisions to the Treatment, to write the Book (or any portion thereof) or in any other manner in connection with the Musical.

    b. <u>Bookwriter Payment</u>: In the event that Berger co-writes the complete book of the Musical (the "Book"), Hello shall pay Berger an additional non-returnable Twenty Thousand Dollars ($20,000) (the "Bookwriting Payment"). Half of the Bookwriting Payment shall be paid to Berger upon Producer's acceptance of the Treatment and Producer's request for Berger to commence writing the first draft of the Book. The remainder of the Bookwriting Payment shall be paid to Berger upon delivery of the first draft of the Book to Producer. To the extent Berger co-writes both the Treatment and the Book, Fifteen Thousand Dollars ($15,000) of the total payments made by Producer to Berger hereunder shall be considered a fee and the remaining Fifteen Thousand Dollars ($15,000) shall be considered an advance against the royalties set forth in Paragraph 3 below.

2) <u>Buyout Provision</u>: Berger hereby acknowledges and agrees that any determination of whether to engage Berger to co-write the Book shall be made by Producer in its sole, unfettered discretion.

In the event that Producer does not elect to retain Berger's services to co-write the Book, Berger agrees to accept the additional sum of Ten Thousand Dollars ($10,000) (i.e. for a twenty thousand dollars ($20,000) total payment) as full and complete consideration in exchange for Producer's unfettered right in and to the Treatment and to the exploitation thereof in all media now known or hereafter developed in perpetuity without further compensation or obligation to Berger. In such instance, Berger hereby agrees that all results and proceeds of Berger's services hereunder in regard to the Treatment and all other material prepared, submitted, written, discussed or interpolated by Berger and provided to Producer hereunder prior to a decision that Berger will not co-write the Book, shall constitute works made-for-hire and shall on their creation be and remain for all purposes the sole and exclusive property of Producer. In the event said results and proceeds are not considered works made-for-hire, Berger hereby irrevocably assigns all right, title and interest Berger may possess in and to said results and proceeds (including, without limitation, the copyright) to Producer. Berger shall deliver to Producer any documents required by Producer to evidence such assignment.

3) Broadway Royalties:

   a. Royalty as bookwriter: In the event Berger co-writes the first draft of the Book which is acceptable to Producer and Marvel in accordance with the Marvel Agreement, he shall receive 37.5% of the bookwriter's share of Weekly Operating Profit, which amount is equal to 1.945% of Weekly Operating Profit pre-recoupment increasing to 2.2225% post recoupment. If Berger, at the request of Bono and Edge, writes lyrics and such lyrics are included in the lyrics of the Musical, the calculation of remuneration, if any, related to such lyrics shall be the responsibility of Bono and Edge and not Producer. It is further understood and agreed that Berger's contributions to the lyrics of the Musical (if any) shall be owned by Bono and Edge for all purposes, and Bono and Edge shall not be responsible for any compensation due and owing to Berger absent their prior written approval and execution of appropriate agreements therefore. Berger shall receive 37.5% of the bookwriter minimum weekly guarantee ("MWG"), which amount shall be calculated and determined on a favored nations basis with all other authors of the Musical.

   b. Amortization: The above royalty percentages will be subject to any pre-recoupment amortization and reduction schedules agreed to by the other creative parties. Such amortization and reduction schedules, and the recovery of such amortization and reduction, shall be on a most favored nations basis, pro rata, with all other authors, the director and the producers of the Musical with respect to such creative royalties.

4) Royalties for Other Productions: In the event Hello produces, co-produces, presents or licenses the Musical as written/co-written by Berger outside of Broadway or the West End, Berger shall be entitled to 37.5% of the bookwriter royalty for all such productions on a favored nations basis with all other authors, the director and the producers of the Musical, with respect to such creative royalties for the amount of the MWG and royalty in terms of calculation and determination.

5) Subsidiary Rights: $1/7^{TH}$ of overall author's subsidiary rights participation net of customary agency commissions and all other third party participations, including Marvel, will go to Julie Taymor. Thereafter, the remainder of author's net share of subsidiary rights proceeds as between the authors will be divided 2/3 to Bono and Edge as composer/lyricist and 1/3 to bookwriter (of which Berger shall receive 37.5% of said 1/3).

6) Delivery and Vesting Schedule:

a. Berger will deliver to Hello the Treatment by July 15, 2005. Berger shall receive a status report regarding approval or disapproval from Hello within thirty (30) days of receipt of the completed Treatment and overall approval/disapproval with detailed notes specifying the reasons for disapproval, if pertinent, within sixty (60) days of such receipt. If either Marvel or Hello and Julie Taymor disapproves the Treatment, Berger will have up to seven (7) days from receipt of such written and detailed notes to submit another draft of the Treatment for approval. Notwithstanding the foregoing, Hello shall have the option to exercise the treatment buyout right set forth in paragraph 2 at any step in this process.

b. Following Hello's approval of the Treatment, Hello shall have the right to request that Berger co-write and deliver the Book. Berger shall deliver at least eighty (80) pages of the Book (if song lyrics are included, otherwise a reasonable amount of pages, but not less than the first act) by ninety (90) days from Hello's written request and the completed Book by ninety (90) days thereafter. In the event, after Berger delivers the first draft of the completed Book to Hello, that Hello, in its sole and absolute discretion, decides not to approve the Book and to replace Berger with another co-bookwriter or to hire an additional co-writer, Berger's royalty percentages hereunder shall be reduced dollar for dollar of any amount paid to the other co-writer to a floor of 50% and Berger shall receive a pro rata share of any advances or MWGs and sub rights on the same reduced basis. In such instance, Producer shall have the unfettered right to use all material created and/or developed by Berger for the Musical, whether in the Treatment, the Book or otherwise, without further compensation to Berger other than that set forth above and herein. The decision regarding whether a replacement or other writer is needed will be made within sixty (60) days of receiving the first draft of the completed Book. Thereafter, Berger will be deemed to have vested in his full share of royalties, sub-rights and credits.

7) Billing: If Berger co-writes the Book, the credit accorded to Berger (which shall be negotiated in good faith) shall be no less than the size of the credit accorded to the other bookwriter(s) of the Musical and shall appear whenever credits appear for the other bookwriter(s).

8) Payments: All royalties, advances, and fees paid to Berger under the terms and conditions of this deal memo shall be paid pro rata with other creatives based on the same definitions as used in Hello's agreements with such creatives.

9) Commercial Use Products: Berger acknowledges and agrees that Producer will have the exclusive right to exploit the merchandising rights in the Musical in connection with each presentation of the Musical hereunder. In connection with exploitation of the Producer's merchandising rights, Producer will pay Berger 37.5% of the bookwriter's share of the authors' income from the exploitation of commercial use products, net of any and all payments to other third parties, including Julie Taymor as director or designer, if applicable.

10) Film Adaptation: Berger acknowledges and agrees that Sony Entertainment, Inc. shall have a right of first negotiation and last refusal regarding a film adaptation of the Musical and that Julie Taymor shall have the right of first refusal to direct such adaptation on customary terms for a director of her stature for a film such as this adaptation. No promises have been made to Berger that he can write the screenplay for such film adaptation.

11) Consultation on Bookwriter/Creative Decisions: Berger shall collaborate with Julie Taymor on bookwriter related and other creative decisions for the Musical; provided, however, Julie Taymor, in her sole and absolute discretion, shall have final approval on all such decisions, including her directing of any film adaptation of the Musical.

12) <u>Confidentiality</u>: Berger hereby agree to keep secret and confidential indefinitely (except as may be necessary to reveal to his legal, business and financial representatives and in connection with any litigation or governmental requirement) the following: (a) the amount, terms, provision and promises contained in this deal memo and (b) any information revealed to him orally or in written form by Producer, the director or any related third party regarding the current or intended content, structure, story, music and form of the Musical or any element thereof and/or any other information regarding the creative development of the Musical or the business structure or deals related to the Musical which is not in the public domain or not revealed by third parties. Berger additionally agrees that he will not, either directly or indirectly, seek or give publicity to, or cooperate in same, the fact of this deal memo or any other information about the Musical without the prior written approval of Producer.

13) <u>Entire Agreement/Governing Law</u>. This deal memo constitutes the entire agreement between the parties concerning the subject matter hereof and shall not be modified or amended except in a writing signed by the parties. This agreement shall be governed by and construed in accordance with the laws of the State of New York.

The parties will enter into a long form agreement prior to the first paid public performance of the Musical which is within the terms allowed under the Marvel Agreement and which incorporates the above stated terms as well as other terms that are found in authors agreements, including terms regarding grant of rights, warranties, representations and indemnification from Producer, subsidiary rights, additional territories, merger, cast album, commercial use products, arbitration and expenses. Notwithstanding the foregoing, Berger shall be entitled to business class airfare and first class hotel as part of the long form agreement.

**Agreed and acknowledged:**

**Hello Entertainment, LLC**

By: _____
   Tony Adams

Date: 9/27/05

By: _____
   David L. Garfinkle

Date: 9/27/05

**Bookwriter**

By: _____
   Glen Berger

Date: 9/24/05