Dale M. Cendali
Claudia Ray
Courtney L. Farkas
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
claudia.ray@kirkland.com
courtney.farkas@kirkland.com
joshua.simmons@kirkland.com

*Attorneys for Defendants and Counterclaim-Plaintiffs*
*8 Legged Productions, LLC; Goodbye*
*Entertainment, LLC; Savior Productions, LLC;*
*Michael Cohl and Jeremiah Harris*

**REDACTED**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIE TAYMOR AND LOH, INC., <br><br>         Plaintiffs, <br><br>    - against - <br><br> 8 LEGGED PRODUCTIONS, LLC; HELLO ENTERTAINMENT, LLC; GOODBYE ENTERTAINMENT, LLC; SAVIOR PRODUCTIONS, LLC; MICHAEL COHL; JEREMIAH HARRIS; AND GLEN BERGER, <br><br>         Defendants. | Case No.  11 Civ. 8002 (KBF) <br><br>        ECF Case <br><br> **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS OF DEFENDANTS 8 LEGGED PRODUCTIONS, LLC (FIRST AND SECOND COUNTERCLAIMS) AND GOODBYE ENTERTAINMENT, LLC (THIRD COUNTERCLAIM)** |

8 LEGGED PRODUCTIONS, LLC; GOODBYE
ENTERTAINMENT, LLC; SAVIOR
PRODUCTIONS, LLC; AND MICHAEL COHL;
JEREMIAH HARRIS,

                        Counterclaim-Plaintiffs,

    - against -

JULIE TAYMOR AND LOH, INC.,

                        Counterclaim-Defendants.

---

GLEN BERGER,

                        Counterclaim-Plaintiff,

    - against -

JULIE TAYMOR AND LOH, INC.,

                        Counterclaim-Defendant.

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...................................................................................1

**FACTUAL BACKGROUND**.....................................................................................2

**ARGUMENT**............................................................................................................2

I.     DEFENDANTS' AMENDED COUNTERCLAIMS SATISFY THE
PLEADING REQUIREMENTS UNDER THE FEDERAL RULES OF
CIVIL PROCEDURE ...................................................................................2

II.    DEFENDANTS' STATE A COUNTERCLAIM FOR BREACH OF
CONTRACT ................................................................................................3

    A.    Defendants Adequately Allege Plaintiffs' Breach of Specific and
Implied Terms of the Co-Bookwriter Agreement......................................4

    B.    Plaintiffs' Arguments Attempt to Treat This Motion as a Bench
Trial......................................................................................................6

        1.    Factual Disagreements Concerning the Proper
Interpretation of a Contract Cannot Be Decided on a
Motion to Dismiss................................................................6

        2.    Plaintiffs' Arguments Merely Raise Factual Issues........................7

III.   DEFENDANTS' FIDUCIARY DUTY CLAIMS SHOULD NOT BE
DISMISSED ..............................................................................................11

    A.    Defendants Properly Pleaded the Existence of a Fiduciary Duty
Between 8 Legged and Taymor Based on Her Employment as a
Co-Bookwriter ......................................................................................12

        1.    Defendants' Second Counterclaim Is Sufficiently Pleaded...........12

        2.    Plaintiffs' Arguments Are Unavailing ...........................................14

    B.    Defendants Properly Pleaded the Existence of and Taymor's
Breach of a Fiduciary Duty to Goodbye Based on Joint Venture
Board Membership..................................................................................16

        1.    Defendants Sufficiently Pleaded Taymor's Fiduciary Duty
to Goodbye...................................................................................16

        2.    Defendants Sufficiently Pleaded Taymor's Breach of Her
Fiduciary Duty ............................................................................20

IV.   THE SDC SETTLEMENT DOES NOT BAR DEFENDANTS'
COUNTERCLAIMS.................................................................................24

**CONCLUSION** ......................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Adv. Mktg. Grp., Inc. v. Bus. Payment Sys., LLC,*
  300 F. App'x. 48 (2d Cir. 2008)...................................................................... 7, 8

*Allison v. Round Table Inv. Mgmt. Co.,*
  447 F. App'x. 274 (2d Cir. 2012) ........................................................................ 3

*Am. Express Bank Ltd. v. Uniroyal, Inc.,*
  562 N.Y.S.2d 613 (App. Div. 1990) ................................................................. 4, 8

*Am. Int'l Grp., Inc. v. Greenberg,*
  877 N.Y.S.2d 614 (Sup. Ct. 2008) ............................................................... passim

*Anheuser-Busch, Inc. v. G.T. Britts Distrib., Inc.,*
  44 F. Supp. 2d 172 (N.D.N.Y. 1999) .................................................................. 6

*Apple Records, Inc. v. Capitol Records, Inc.,*
  529 N.Y.S.2d 279 (App. Div. 1988) ................................................................. 15

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ......................................................................................... 2

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 2

*Bell v. Leakas,*
  No. 90 Civ. 7891, 1993 WL 77320 (S.D.N.Y. Mar. 13, 1993)............................ 7

*Birnbaum v. Birnbaum,*
  73 N.Y.2d 461 (1989) ................................................................................... 20, 21

*Carson v. Lynch Multimedia Corp.,*
  123 F. Supp. 2d 1254 (D. Kan. 2000) ............................................................... 17

*Christ v. Lake Erie Distribs., Inc.,*
  273 N.Y.S.2d 878 (Sup. Ct. 1966) .................................................................... 19

*Connolly v. Dresdner Bank AG,*
  No. 08 Civ. 5018, 2009 WL 1138712 (S.D.N.Y. Apr. 27, 2009) ........................ 3

*Dardaganis v. Grace Capital, Inc.,*
  664 F. Supp. 105 (S.D.N.Y. 1987)..................................................................... 17

*Design Strategies, Inc. v. Davis,*
  384 F. Supp. 2d 649 (S.D.N.Y. 2005)................................................................ 12

*DiFalco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d Cir. 2010)............................................................................. 7, 8

*EBC I, Inc. v. Goldman Sachs & Co.,*
  5 N.Y.3d 11 (2005) ...................................................................................... 15, 23

*EBC I, Inc. v. Goldman Sachs & Co.,*
  936 N.Y.S.2d 92 (App. Div. 2011) ............................................................... 19, 20

*eBusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Solutions, LLC*,
   No. 08 Civ. 9101, 2009 WL 5179535 (S.D.N.Y. Dec. 29, 2009) ............................................ 18

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) .................................................................................................... 7

*Fischer & Mandell LLP v. Citibank, N.A.*,
   632 F.3d 793 (2d Cir. 2011) .................................................................................................... 3

*Freeman v. Nat'l Broad. Co.*,
   80 F.3d 78 (2d Cir. 1996) ...................................................................................................... 13

*GMAC Commercial Corp. v. Niagara Mohawk Power Corp.*,
   No. 89 Civ. 4956, 1990 WL 64535 (S.D.N.Y. May 7, 1990) .................................................. 9

*Goldin-Feldman Co. v. Blum & Fink, Inc.*,
   No. 99 Civ. 11637, 2000 WL 1182798 (S.D.N.Y. Aug. 18, 2000) ......................................... 7

*Grund v. Del. Charter Guar. & Trust Co.*,
   788 F. Supp. 2d 226 (S.D.N.Y. 2011) ............................................................. 11, 14, 20, 23

*Hanson Trust PLC v. ML SCM Acquisition, Inc.*,
   781 F.2d 264 (2d Cir. 1986) .................................................................................................. 22

*Henneberry v. Sumitomo Corp. of Am.*,
   415 F. Supp. 2d 423 (S.D.N.Y. 2006) ................................................................................... 13

*Higgins v. New York Stock Exchange, Inc.*,
   806 N.Y.S.2d 339 (Sup. Ct. 2005) ........................................................................................ 22

*In re Adelphia Commc'ns Corp.*,
   336 B.R. 610 (S.D.N.Y. 2006 ................................................................................................ 22

*JA Apparel Corp. v. Abboud*,
   568 F.3d 390 (2d Cir. 2009) .................................................................................................... 7

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
   No. 08 Civ. 9116, 2009 WL 32122 (S.D.N.Y. Feb. 9, 2009) ............................................... 16

*Kagan v. HMC-New York, Inc.*,
   939 N.Y.S.2d 384 (App. Div. 2012) ...................................................................................... 23

*Kaminsky v. Gamache*,
   751 N.Y.S.2d 254 (App. Div. 2002) ...................................................................................... 25

*Kaplan v. Vincent*,
   937 F. Supp. 307 (S.D.N.Y. 1996) .......................................................................................... 8

*Katz v. Feinberg*,
   167 F. Supp. 2d 556 (S.D.N.Y. 2001) ..................................................................................... 9

*Kidz Cloz, Inc. v. Officially For Kids, Inc.*,
   No. 00 Civ. 6270, 2002 WL 392291 (S.D.N.Y. Mar. 13, 2002) ..................................... 14, 15

*Krumme v. WestPoint Stevens Inc.*,
   238 F.3d 133 (2d Cir. 2000) .................................................................................................... 4

*Lino Del Zotto & Son Builders Inc. v. Colombe*,
  628 N.Y.S.2d 444 (App. Div. 1995) ........................................................ 8

*Lucente v. Int'l Bus. Machines Corp.*,
  310 F.3d 243 (2d Cir. 2002) .................................................................. 10

*Marinoff v. City Coll. of N.Y.*,
  63 F. App'x. 530 (2d Cir. 2003) ............................................................. 24

*Marmelstein v. Kehillat New Hempstead*,
  841 N.Y.S.2d 493 (2007) ....................................................................... 19

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary
Dance, Inc.*,
  380 F.3d 624 (2d Cir. 2004) ................................................................... 21

*Marx v. Akers*,
  88 N.Y.2d 189 (1996) ............................................................................. 22

*Mazzola v. Cnty. of Suffolk*,
  533 N.Y.S.2d 297 (App. Div. 1988) ......................................................... 8

*Meisel v. Grunberg*,
  651 F. Supp. 2d 98 (S.D.N.Y. 2009) ....................................................... 24

*Mellencamp v. Riva Music, Ltd.*,
  698 F. Supp. 1154 (S.D.N.Y. 1988) ......................................................... 16

*Meyer v. Fanelli*,
  698 N.Y.S.2d 311 (App. Div. 1999) ......................................................... 25

*Niss v. Columbia Pictures Indus., Inc.*,
  No. 97 Civ. 4636, 2000 WL 1862814 (S.D.N.Y. Dec. 20, 2000) ............. 13

*Novick v. AXA Network, LLC*,
  642 F.3d 304 (2d Cir. 2011) .................................................................... 8

*Pemberton v. Windsor Leasing Co.*,
  58 N.Y.S.2d 292 (Sup. Ct. 1945) ............................................................ 16

*Pension Comm. of U. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) ...................................... 11, 12, 13, 20

*Press v. Chem. Inv. Servs. Corp.*,
  166 F.3d 529 (2d Cir. 1999) ................................................................... 23

*Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*,
  748 F.2d 774 (2d Cir. 1984) ................................................................... 24

*Sanders v. Madison Square Garden, L.P.*,
  No. 06 Civ. 589, 2007 WL 1933933 (S.D.N.Y. July 2, 2007) .................. 22

*Serdarevic v. Centex Homes, LLC*,
  60 F. Supp. 2d 322, 333 (S.D.N.Y. 2010) ................................................ 9

*St. John's Univ., N.Y. v. Bolton*,
  757 F. Supp. 2d 144 (E.D.N.Y. 2010) ............................................... passim

*Streit v. Bushnell,*
    424 F. Supp. 2d 633 (S.D.N.Y. 2006) ................................................................. 3

*Toledo Fund, LLC v. HSBC,*
    No. 11 Civ. 7686, 2012 WL 364045 (S.D.N.Y. Feb. 3, 2012) .............................. 3

*United States v. Falcone,*
    257 F.3d 226 (2d Cir. 2001) .............................................................................. 17

*United States v. Reed,*
    601 F. Supp. 685 (S.D.N.Y. 1985) ............................................................... 12, 20

*Universal-MCA Music Publ'g v. Bad Boy Entm't,*
    No. 601935/02, 2003 WL 21497318 (N.Y. Sup. Ct. June 18, 2003) ..................... 15

*W. Elec. Co. v. Brenner,*
    41 N.Y.2d 291 (1977) .................................................................................. 12, 13

*W.B. David & Co., Inc. v. DWA Comm'cns, Inc.,*
    No. 02 Civ. 8479, 2004 WL 369147 (S.D.N.Y. Feb. 26, 2004) .............................. 3

*Willian P. Pal Equip. Corp. v. Kassis,*
    558 N.Y.S.2d 8 (App. Div. 1992) ........................................................................ 9

Willsea v. Theis,
    No. 98 Civ. 6773, 1999 WL 595629 (S.D.N.Y. Aug. 6, 1999) ............................... 15

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,*
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ................................................................. 15

**Rules**

FED. R. CIV. P. 12(b)(6) ................................................................................... 24

FED. R. CIV. P. 8(a)(2) ....................................................................................... 3

Defendants 8 Legged Productions, LLC ("8 Legged") and Goodbye Entertainment, LLC ("Goodbye") (collectively, "Defendants") submit this memorandum of law in opposition to Julie Taymor ("Taymor") and LOH, Inc.'s (collectively, "Plaintiffs") motion to dismiss Defendants' First, Second, and Third Amended Counterclaims (Dkt. No. 35) (the "Counterclaims").

## PRELIMINARY STATEMENT

As Spider-Man himself has taught us, with great power, comes great responsibility.  It appears that this lesson has been lost on Taymor, however, who now seeks to avoid her obligations.  Plaintiffs' motion seeks to dismiss Defendants' Counterclaims for breach of contract and breach of fiduciary duties, asking this Court to ignore the ample factual basis that Defendants alleged in their Counterclaims.  But Defendants as the non-movants need only show that, taking the facts Defendants have pleaded as true, they have alleged sufficient facts to state a plausible claim for relief.  Contrary to Plaintiffs' assertions, Defendants have done just that.

The Counterclaims specifically allege that Taymor was contracted to co-write a script or "book" for a commercial, for-profit musical about the beloved Spider-Man character (the "*Spider-Man* Musical" or "Musical").  They also allege that Taymor breached her contractual duties in myriad ways, including by failing to write anything, to produce a finished book, to focus the book on the Spider-Man character, to make changes, or to permit her co-bookwriter to make changes.  The Counterclaims then go on to allege that Taymor owed fiduciary duties both as a co-bookwriter who was employed by Defendants and entrusted by them with unprecedented resources, and as a member of a board that was tasked with making all "major decisions" for the production.  They further allege that Taymor breached those fiduciary duties by putting her own personal interests above those of the show and refusing to cooperate with members of the production or support changes to the show that would allow it to be successful.

In response, Plaintiffs attempt to treat their motion to dismiss as if it were a bench trial by

asking this Court to decide a host of disputed factual issues that could not be determined even on

a motion for summary judgment, let alone on a motion to dismiss.  Plaintiffs also raise the red

herring of 8 Legged's settlement with the Society of Directors and Choreographers ("SDC") in a

separate arbitration involving a separate written agreement, which by its very terms █████████

██████████████████████████████████████████████████████████

Because Defendants have pleaded in detail facts supporting the Counterclaims, and

because they did not "release" any of those facts in the separate SDC arbitration, Plaintiffs'

motion to dismiss should be denied in its entirety.  If the Court chooses not to deny Plaintiffs'

motion, however, Defendants request leave to amend their Counterclaims.

## FACTUAL BACKGROUND

Defendants respectfully refer the Court to the Counterclaims for their factual basis.

## ARGUMENT

## I.   DEFENDANTS' AMENDED COUNTERCLAIMS SATISFY THE PLEADING REQUIREMENTS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

Although Plaintiffs attempt to disregard the pleading requirements under the Federal

Rules of Civil Procedure and the relevant case law,[1] the Supreme Court has made clear that in

order to defeat a motion to dismiss, a party need only allege "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ;

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959–60 (2009).  Thus, Defendants need only set forth

allegations sufficient to "raise a right to relief above the speculative level."  *Id.* at 555.  Indeed,

the Federal Rules explicitly state that only "a short and plain statement of the claim" is required

at the pleading stage to give Plaintiffs fair notice of the claim and the basis on which it rests.

---

[1]   Defendants note that Plaintiffs' brief improperly relies on argumentation in footnotes, in violation of Section 2(D) of Your Honor's Individual Practices.

FED. R. CIV. P. 8(a)(2).  Moreover, Defendants' factual allegations must be accepted as true and liberally construed, and all reasonable inferences should be drawn in Defendants' favor.  *Allison v. Round Table Inv. Mgmt. Co.*, 447 F. App'x. 274, 275 (2d Cir. 2012).  This is true "regardless of the [answering party's] denials and contrary versions of the underlying events."  *Streit v. Bushnell*, 424 F. Supp. 2d 633, 641 (S.D.N.Y. 2006).  The "issue is not whether [Defendants] will ultimately prevail but whether [they are] entitled to offer evidence to support the claims."  *Connolly v. Dresdner Bank AG*, No. 08 Civ. 5018, 2009 WL 1138712, at *2 (S.D.N.Y. Apr. 27, 2009) (internal quotation marks omitted).  Where "there is a plausible set of facts that could entitle [a party] to relief on its breach of contract claim," the merits of the claim should be "left for another day" and a motion to dismiss should be denied.  *Toledo Fund, LLC v. HSBC*, No. 11 Civ. 7686, 2012 WL 364045, at *5 (S.D.N.Y. Feb. 3, 2012) (J. Forrest); *Streit*, 424 F. Supp. 2d at 638 ("[I]t is not the role of the Court at this point to choose summarily who is right or wrong").  Here, because Defendants' First, Second and Third Counterclaims provide Plaintiffs with fair notice of Defendants' breach of contract and breach of fiduciary duty claims, and provide enough facts to state a claim to relief that is plausible on its face, Plaintiffs' motion to dismiss should be denied in its entirety.

## II.   DEFENDANTS' STATE A COUNTERCLAIM FOR BREACH OF CONTRACT

Under New York law, a breach of contract claim based on the specific or implied terms of a contract requires proof of: "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  *Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *W.B. David & Co., Inc. v. DWA Comm'cns, Inc.*, No. 02 Civ. 8479, 2004 WL 369147, at *2–3 (S.D.N.Y. Feb. 26, 2004) (denying motion to dismiss as pleaded facts properly alleged contract's existence). Plaintiffs do not dispute that the First Counterclaim sufficiently alleges the existence of an agreement adequately performed by Defendants and

damages.  Plaintiffs' argument rests solely on the "breach" element of the counterclaim.

> ### A.   Defendants Adequately Allege Plaintiffs' Breach of Specific and Implied Terms of the Co-Bookwriter Agreement

Contrary to Plaintiffs' argument that Defendants have not stated a claim of breach, the Counterclaims contain detailed allegations that Plaintiffs breached both "the <u>specific</u> and <u>implied</u> terms of the Co-Bookwriter Agreement." Countercls. ¶ 135 (emphasis added).  First, Defendants allege that Taymor breached her agreement by "failing to actually write any text for the Book." *Id.* ¶ 133.  Tellingly, Plaintiffs essentially admit that Taymor did not write the Old Book, Pls.' Br. 11, but rather, as the Counterclaims allege, merely contributed general ideas while her co-bookwriter did the actual writing.  Countercls. ¶ 48.  The only question, then, is whether Defendants adequately allege that writing the Old Book's text is a term of the agreement.  The agreement, however, specifically states that Taymor was to serve as a "co-owner/co-writer of the book of the Musical."  *Id.*, Ex. 1.  While Plaintiffs may wish it were not so, it is nonsensical to argue that someone employed as a "co-writer" was not intended to "write" something with someone else, as that is the term's plain meaning.  *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) (words and phrases must be given their plain meaning); *Am. Express Bank Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613, 614 (App. Div. 1990) (same).

Not only was writing an explicit term of Taymor's contract, but the Counterclaims allege that "[a]s a co-bookwriter, it was <u>understood</u> that Taymor would co-write the treatment and the book for the *Spider-Man* Musical."  Countercls. ¶ 38 (emphasis added).  As alleged in the Counterclaims, this understanding is evidenced by the fact that Taymor was replaced as a co-bookwriter by Aguirre-Sacasa, who, with Berger, actually wrote the New Book.  *Id.* ¶¶ 100–01.

Second, Defendants allege that Taymor breached her agreement by "failing to produce a finished book prior to the first public performance of Spider-Man of any time thereafter."  *Id.* ¶

133.  The Co-Bookwriter Agreement clearly contemplated the writing of a "book," not a "partial" or "incomplete" book.  As alleged in the Counterclaims, however, the Old Book that was produced when Taymor was the co-bookwriter and that was performed on the first night of previews lacked an ending—a requirement of any musical's book.  *Id.* ¶¶ 6, 61.  Although the Producers believed that Taymor would make the necessary changes to the Old Book, including adding an ending, Taymor never delivered a completed book.  *Id.* ¶¶ 62–64, 97–98.

Third, Defendants allege that Taymor breached her agreement by "insisting—despite the protestation of [Defendants], the other members of the Musical's creative team and Marvel—that the *Spider-Man* Musical focus on the character of Arachne and relegating the Spider-Man character to a minor role."  *Id.* ¶ 133.  As Taymor's agreement states, she was to serve as the co-writer "of the musical currently entitled <u>Spider-Man</u>: A Musical Web."  *Id.*, Ex. 1 (emphasis added).  Plaintiffs tacitly admit that the agreement called for a musical about the Spider-Man character.  Pls.' Br. 14.  Moreover, Marvel specifically licensed the right to produce a Musical about Spider-Man, and, the Counterclaims allege that the goal of the production was to create a musical about the famous web-slinger.  Countercls. ¶¶ 25–26, 41, 43, 46, 50, 60–62, 76.  Indeed, Marvel explicitly stated that they wanted the Musical " to be true to the source material, <u>to concentrate on Peter Parker's journey</u> and to appeal to all audiences." *Id.* ¶ 46 (emphasis added).

The Counterclaims allege, however, that Taymor insisted that the Musical focus on the Arachne character, and refused to reduce Arachne's role despite Marvel's and the Producers' repeated requests that she do so.  *Id.* ¶¶ 3, 44, 60–62, 82.  For example, after seeing the Old Book performed at a stage reading, Marvel criticized it for improperly focusing on Arachne as opposed to Spider-Man and demanded that "the supporting characters must not overshadow the main character, Peter Parker/Spider-Man."  *Id.* ¶ 50.  After the Producers took over and were finally

able to see a full run-through of the show on the first night of previews, they had similar concerns about its over-emphasis of Arachne. *Id.* ¶¶ 60–62. The Counterclaims allege that although Taymor repeatedly assured Marvel and the Producers that such concerns would be addressed and changes would be made, she had no intention of doing so. *Id.* ¶¶ 47, 62, 64.

Finally, Defendants allege that Taymor breached her agreement by "failing to make changes to the Book requested by the Producers" and "preventing her co-bookwriter, Berger, from making the changes to the Book requested by Producers." *Id.* ¶ 133. The Counterclaims allege that Taymor had an implicit obligation to make or to allow for changes to the content of the Musical as she was employed as a co-bookwriter and, in that role, she had an obligation to follow the directions of her employers, the Producers. *Id.* ¶¶ 41, 133, 153. Taymor, however, misled the Producers to believe that she was making the requested changes and then finally refused to cooperate, to address their concerns or to perform as a co-bookwriter. *Id.* ¶¶ 62–64.

As each of these failures is sufficient to support Defendants' claim for breach of contract, Plaintiffs' motion as to the First Counterclaim should be denied. *See Anheuser-Busch, Inc. v. G.T. Britts Distrib., Inc.*, 44 F. Supp. 2d 172, 176–77 (N.D.N.Y. 1999) (denying motion to dismiss where plaintiff alleged a contract between the parties violated by the defendant's acts).

**B.      Plaintiffs' Arguments Attempt to Treat This Motion as a Bench Trial**

      1.      <u>Factual Disagreements Concerning the Proper Interpretation of a Contract Cannot Be Decided on a Motion to Dismiss</u>

Faced with Defendants' well pleaded counterclaim alleging their breach, Plaintiffs improperly attempt to raise factual disagreements concerning the proper interpretation of the Co-Bookwriter Agreement, including the meaning of the contract's terms, the parties' intent and the custom in the industry. The law of this Circuit is clear, however, that such arguments are inappropriate on a motion to dismiss as they necessarily involve issues of fact. *See Adv. Mktg.*

*Grp., Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x. 48, 49 (2d Cir. 2008) (reversing district court dismissal where factual evidence regarding contract negotiations and course of dealings between parties was required to interpret contract); *see DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112–13 (2d Cir. 2010) (vacating district court's dismissal as fact issues existed).

Moreover, to the extent that the Co-Bookwriter Agreement's terms are ambiguous, Plaintiffs' motion also fails as the "Court's role in deciding a . . . motion to dismiss a breach of contract claim is not to resolve ambiguities in the contract language." *Goldin-Feldman Co. v. Blum & Fink, Inc.*, No. 99 Civ. 11637, 2000 WL 1182798, at *3 (S.D.N.Y. Aug. 18, 2000); *Bell v. Leakas*, No. 90 Civ. 7891, 1993 WL 77320, at *7 (S.D.N.Y. Mar. 13, 1993) (denying motion to dismiss contract claim where "the meaning ascribed by Plaintiffs will be taken as true for the purposes of" 12(b)(6) motion); *see JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (meaning of ambiguous contract is question of fact preventing dismissal); *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) (same).

2.   <u>Plaintiffs' Arguments Merely Raise Factual Issues</u>

Regarding the substance of the Counterclaims, Plaintiffs first argue that although the Counterclaims clearly allege that Taymor was required to write the Book's text, Taymor's agreement contemplated her delegating the actual writing of the Old Book to her co-bookwriter. Pls.' Br. 10.  The agreement, however, contains no provision permitting such a delegation, and Plaintiffs' interpretation is contrary to the allegations in the Counterclaims, which must be taken as true for the purposes of this motion, that both Taymor and Berger were required to write the Musical's book as "co-bookwriters."  Countercls. ¶¶ 38–41, 48, 133.  Rather, Plaintiffs are attempting to add terms to the agreement and distort its meaning, which their own cases indicate is not permitted.  Pls.' Br. 10.  By contrast, Defendants merely ask that the Court apply the plain meaning of the terms of the the agreement and find that Defendants have pleaded sufficient facts

to survive a motion to dismiss.  *See Am. Express*, 562 N.Y.S.2d at 614 (words and phrases are given their plain meaning); *Mazzola v. Cnty. of Suffolk*, 533 N.Y.S.2d 297, 297 (App. Div. 1988) (same).  Moreover, whether or not Taymor wrote a two-and-a-half page treatment for the Musical, Pls.' Br. 11, is irrelevant, as it does not change the fact that Taymor did not write the book she was contracted to write.

Second, Plaintiffs' argument that Taymor was not obligated to finish the Old Book, Pls.' Br. 12, is nonsensical.  Leaving aside that this is another tacit admission that Taymor failed to do her job, where a party is contracted to create something, common sense dictates that an implied term of the contract requires the party to deliver a completed version of that thing.  *See Novick v. AXA Network, LLC*, 642 F.3d 304, 312 (2d Cir. 2011) (parties' intent must be "applied with a measure of common sense" when interpreting a contract); *Lino Del Zotto & Son Builders Inc. v. Colombe*, 628 N.Y.S.2d 444, 445 (App. Div. 1995)  (breach of contract claim sufficiently alleged based on implied requirement that dry wall service be performed in a skillful and workmanlike manner).  Thus, an implied term of a contract to write a book is that the book will be delivered completed and with an ending.  *See Kaplan v. Vincent*, 937 F. Supp. 307, 318 (S.D.N.Y. 1996) (writer of memoirs failed to fully perform alleged contract by producing incomplete manuscript). Here, the Counterclaims clearly allege that on the first night of previews, the Old Book did not have an ending.  Countercls. ¶¶ 6, 61.  Plaintiffs' claim that the Old Book's text ends does not change the fact that Defendants have alleged that, as performed, there was no narrative ending; at best it is an issue of fact that cannot be resolved on a motion to dismiss.  *See DiFalco*, 622 F.3d at 112–13; *Adv. Mktg. Grp., Inc.* , 300 F. App'x. at 49.

Plaintiffs also attempt to rely on Berger's co-bookwriter agreement, which sets forth a schedule for him to perform certain duties, to suggest a contrary conclusion, Pls.' Br. 13, but that

agreement cannot evidence the intent of the parties to Taymor's agreement or its meaning, as the Berger and Taymor agreements involve different parties and different circumstances.  *See GMAC Commercial Corp. v. Niagara Mohawk Power Corp.*, No. 89 Civ. 4956, 1990 WL 64535, at *5 (S.D.N.Y. May 7, 1990) (refusing to look to separate agreement that plaintiff entered into with third party to interpret separate agreement).  This point is reinforced by the cases Plaintiffs rely upon, *Katz v. Feinberg*, 167 F. Supp. 2d 556 (S.D.N.Y. 2001) and *Willian P. Pal Equip. Corp. v. Kassis*, 558 N.Y.S.2d 8 (App. Div. 1992), as in both cases the courts looked to contracts entered into by the <u>same</u> parties to evidence the intent of those parties, not different parties.

Third, Plaintiffs' argument that the Old Book was not required to focus on the Spider-Man character, Pls.' Br. 14, is contradicted, as discussed above, by the Co-Bookwriter Agreement and the Counterclaims' allegations.  *See supra* at 5.  Defendants have clearly alleged that the Old Book did not focus on Spider-Man.  Countercls. ¶¶ 50, 51, 60–62, 76, 81.  To the extent disagreement exists as to whether Taymor complied with her obligation to produce a book about Spider-Man, it is a factual issue to be decided by a jury after discovery concludes.  *See Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 333 (S.D.N.Y. 2010)  (denying motion to dismiss and accepting non-movant's plausible interpretation of ambiguous phrase where parties disagreed as to its interpretation).

Fourth, Plaintiffs purport to show that Defendants' allegations cannot support a breach claim by selectively quoting from the Co-Bookwriter Agreement, as well as Berger's co-bookwriter agreement, and claiming that no one but Taymor had "creative control over the content of [her] work."  Pls.' Br. 12.  Plaintiffs' argument, however, does not concern what Defendants have alleged, but rather what the proper interpretation of the contract should be.  As such, Plaintiffs are asking the Court to decide, without discovery, the intent of the parties and the

meaning of the agreement's terms, which are both factual issues that cannot be decided on a motion to dismiss.  *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 257 (2d Cir. 2002) (contract's meaning is a factual issue when its language is "susceptible to different interpretations and where there is relevant extrinsic evidence of the parties' actual intent").

Plaintiffs' argument is also belied by the Co-Bookwriter Agreement's plain language, which states that Taymor's "approval" as a co-writer was "(to be <u>shared</u> with the composer and lyricist, and, if such parties and Lender agree, with the bookwriter) over dispositions of rights to the Musical, and all other decisions customarily reserved to the authors of a Musical." Countercls., Ex. 1 (emphasis added).  The agreement also explicitly refers to "Marvel's March 25, 2004 agreement with Hello," which licensed the right to use the underlying *Spider-Man* property.  *Id.*  Pursuant to that license, which has been assigned to 8 Legged, Marvel has approval rights over the "story, basic treatment, overall concept . . . including but not limited to the basic storyline, character descriptions, portrayal of the powers, basic personal traits, physical appearance and the living habitat environment and setting thereof."  *Id.* ¶¶ 13, 41.  Thus, despite Plaintiffs' attempt to suggest otherwise, any approvals that Taymor might have had were not hers alone, but were shared with the composer and lyricist, Marvel, and possibly Berger.  *See id.* ¶¶ 26–27, 39–41.  Plaintiffs attempt to claim otherwise by pointing to Berger's agreement, Pls.' Br. 12, but Taymor is not a party to that agreement, nor does it change the terms of her agreement.

Further, the agreement states that Taymor's shared approvals were to be over "decisions customarily reserved to the authors of a Musical."  Countercls., Ex. 1.  The meaning of that phrase, however, is likely to be the subject of factual debate and possibly expert analysis.  And contrary to Plaintiffs' assertion, Defendants are not attempting to write a "satisfaction" clause into the contract, but rather to give its terms their plain meaning as, pursuant to those terms,

Taymor did not have sole control over the content of the Musical's book. *Id.* To the contrary, it is Plaintiffs that are attempting to remove from the contract any obligations Taymor was required to fulfill in order to receive remuneration and credit as a co-bookwriter. It is ironic that although Plaintiffs brought this lawsuit seeking riches by alleging breach of contract and copyright infringement based on Taymor's role as a writer, in the context of this motion they argue that she was not obligated to write anything, much less a finished book or a book about Spider-Man.

## III.   DEFENDANTS' FIDUCIARY DUTY CLAIMS SHOULD NOT BE DISMISSED

Plaintiffs also move to dismiss Defendants' breach of fiduciary duty counterclaims (Counts Two and Three). Under New York law, such claims require that a party allege: "(1) the existence of a fiduciary duty between the parties; (2) a breach of that duty; (3) the defendant's knowing participation in that breach; and (4) damages resulting from that breach." *Grund v. Del. Charter Guar. & Trust Co.*, 788 F. Supp. 2d 226, 248 (S.D.N.Y. 2011). Because a claim for breach of fiduciary duty necessarily involves fact-specific inquiries—such as "whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence"— New York law is clear that it "should not be resolved on a motion to dismiss." *Grund*, 788 F. Supp. 2d at 249; *Pension Comm. of U. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 196 (S.D.N.Y. 2006) ("Whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge is a 'fact-specific inquiry.'").

Here, as discussed below, Defendants have pleaded sufficient facts to support these claims, including that Taymor owed fiduciary duties to 8 Legged as an employed co-bookwriter and to Goodbye as a board member of a joint venture between Goodbye and Hello (the "Joint Venture Agreement") and that she breached those duties. As the allegations must be taken as true, this Court should deny this motion and permit the parties to develop a sufficient factual record to decide the nature and extent of the trust and confidence Defendants reposed in Taymor.

A.   **Defendants Properly Pleaded the Existence of a Fiduciary Duty Between 8 Legged and Taymor Based on Her Employment as a Co-Bookwriter**

1.   Defendants' Second Counterclaim Is Sufficiently Pleaded

Defendants' Second Counterclaim alleges that, as an employee hired to serve as a co-bookwriter, Taymor owed fiduciary obligations to 8 Legged that she breached, particularly given the trust and confidence 8 Legged reposed in Taymor.  Countercls. ¶¶ 136–141.  Plaintiffs' sole basis for seeking to dismiss this counterclaim is the erroneous argument that Taymor's status as a co-bookwriter did not give rise to any fiduciary duties of good faith or loyalty.  Pls.' Br. 15.  In New York, however, "the existence of a fiduciary relationship is determined on a case-by-case basis."  *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 166 (E.D.N.Y. 2010); *see Pension*, 446 F. Supp. 2d at 196 (fiduciary relationships exist in any case "in which influence has been acquired and abused, in which confidence has been reposed and betrayed"); *United States v. Reed*, 601 F. Supp. 685, 704 (S.D.N.Y. 1985) (courts "have refused to set any bounds to the circumstances out of which a fiduciary may spring"); *Am. Int'l Grp., Inc. v. Greenberg*, 877 N.Y.S.2d 614, 624 (Sup. Ct. 2008) (deciding existence of a fiduciary relationship requires fact-specific inquiry as to all the circumstances and conduct relevant to the parties' relationship).

One situation where courts readily find fiduciary duties is the employee-employer relationship.  *See Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 659 (S.D.N.Y. 2005) ("Under New York law, an employee owes a duty of good faith and loyalty to his employer."); *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 294–95 (1977) (employee's duty of loyalty is "fundamental" to the employer-employee relationship).  "The New York Court of Appeals [has] emphasized the broad nature of this duty."  *Design Strategies*, 384 F. Supp. 2d at 659.

Here, Defendants allege just such a relationship, asserting in the Counterclaims that Taymor, as an employee serving as the *Spider-Man* Musical's co-bookwriter, owed 8 Legged,

her employer, a fiduciary duty.  *See* Countercls. ¶¶ 137–138; *cf. Freeman v. Nat'l Broad. Co.*, 80 F.3d 78, 82 (2d Cir. 1996) (television news writer is an employee); *Niss v. Columbia Pictures Indus., Inc.*, No. 97 Civ. 4636, 2000 WL 1862814, at *10 (S.D.N.Y. Dec. 20, 2000) (screenwriter is employee of film production company).  Thus, by virtue of her employment status alone, Taymor owed 8 Legged fiduciary duties.  *See W. Elec.*, 41 N.Y.2d at 294 (affirming denial of motion to dismiss fiduciary duty claim based solely on employer-employee relationship).

Beyond an employment relationship, fiduciary duties may also exist in any situation "where it can be readily seen that one party reasonably trusted another."  *St. John's*, 757 F. Supp. 2d at 166.  In considering whether such a relationship exists, courts "weigh the substance of the parties' relationship including the closeness and ongoing nature of the contacts," as well as "whether the plaintiff reposed special trust or confidence in the defendants, or whether the defendant is in a position of dominance over the plaintiff."  *Am. Int'l*, 877 N.Y.S.2d at 624; *see Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 459 (S.D.N.Y. 2006) (courts "conduct a fact-specific inquiry into whether a party reposed confidence in another and reasonably relied on the other's superior expertise"); *Pension*, 446 F. Supp. 2d at 196 (same).  For example, in *St. John's University, N.Y. v. Bolton*, a university alleged that a professor and his graduate student had a fiduciary duty to the university because they had been entrusted with discretion and autonomy in carrying out their research and in making use of the university's resources.  757 F. Supp. 2d at 168.  The university also alleged that its trust was based on their "special knowledge and expertise required to exploit those resources," which left the university "dependent on them."  *Id.*  The court determined that, under those circumstances, the professor and the graduate student would be fiduciaries of the university and owe it fiduciary duties, and denied the motion to dismiss the fiduciary duty claim.  *Id.* at 168, 194.

- 13 -

Similarly, here, Defendants allege that a fiduciary relationship existed between the parties based on the closeness and ongoing nature of their relationship. *See* Countercls. ¶¶ 137–138. Defendants allege that as a co-bookwriter, "Taymor was to act in the best interests of 8 Legged and thus not do anything that would undermine the commercial success of the Musical." *Id.* ¶ 138. Furthermore, as the *Spider-Man* Musical's co-bookwriter she was required to co-write the book and to work closely with the Producers and the other production team members, including Berger. *See id.* ¶¶ 8–9, 41. Defendants also allege that they gave Taymor broad discretion over the writing of the book and entrusted her with the management of considerable resources to support her activities, including unprecedented financial support and whatever other resources she claimed to require to develop the Musical's book. *See id.* ¶¶ 62–63, 92–97. They did so because Taymor claimed to have superior knowledge, skill and expertise in this field. *See id.* Taymor also was allegedly entrusted with confidential information, such as the fact that "8 Legged planned to bring the show to non-Broadway venues so as to allow the show to be successful." *Id.* ¶ 59. The existence of the parties' seven year relationship, which Plaintiffs do not deny, also supports Defendants' claim. See *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, No. 00 Civ. 6270, 2002 WL 392291, at *5 n.2 (S.D.N.Y. Mar. 13, 2002) (denying motion to dismiss due to, in part, long-standing relationship). Accordingly, Defendants have sufficiently pleaded facts alleging that, as an employee and by virtue of the trust and confidence reposed in her as a co-bookwriter, Taymor owed 8 Legged fiduciary duties.

### 2.   Plaintiffs' Arguments Are Unavailing

Although Plaintiffs attempt to argue that Taymor's contract weighs against a finding of fiduciary duties, Pls.' Br. 15, "the existence of a contract between the parties . . . does not preclude a finding of a fiduciary relationship," but rather "may *create* a fiduciary relationship." *St. John's*, 757 F. Supp. 2d at 166 (emphasis added); *see Grund*, 788 F. Supp. 2d at 248 ("A

fiduciary relationship may arise through contract."); *Am. Int'l Grp., Inc.*, 877 N.Y.S.2d at 624 (denying motion to dismiss where defendants were hand-picked to direct and control companies and parties had long relationship).  Plaintiffs' cases are not to the contrary.  *See Kidz Cloz, Inc.*, 2002 WL 392291, at *5 (refusing to dismiss claim as party had sufficiently alleged existence of fiduciary relationship); *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 20 (2005) (fiduciary liability results from relationship between parties); *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007) ("This is not to say that parties in contract are never in a fiduciary relationship . . . .").  In fact, in *EBC*, the New York Court of Appeals rejected the argument that an arm's length commercial relationship could not give rise to fiduciary duties.  5 N.Y.3d at 20.  Rather, the court determined that a "relationship of higher trust" had been alleged, which precluded dismissal.  *Id.* at 20–22.

Similarly, Plaintiffs' argument that contracts with creative artists do not typically lend themselves to the creation of fiduciary duties, Pls.' Br. 15, is irrelevant given that, as discussed above, Defendants have sufficiently pleaded that the circumstances of Taymor's relationship with 8 Legged gave rise to such duties in this case.  Moreover, New York law does not preclude fiduciary relationships with creative artists.  *See Willsea v. Theis*, No. 98 Civ. 6773, 1999 WL 595629 at*6 (S.D.N.Y. Aug. 6, 1999) (alleged fiduciary relationship between co-authors sufficient to withstand motion to dismiss); *Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 283 (App. Div. 1988) (affirming lower court's refusal to dismiss fiduciary duty claim by recording artist against record label); *Universal-MCA Music Publ'g v. Bad Boy Entm't*, No. 601935/02, 2003 WL 21497318, at *8–9 (N.Y. Sup. Ct. June 18, 2003) (alleged circumstances and conduct between co-owner of musical composition copyright and co-author adequately pleaded to give rise to a fiduciary duty).

Unlike the circumstances in the cases cited by Plaintiffs—all of which involve one-time recording and publishing agreements—Defendants allege that Taymor was 8 Legged's employee writing the book of a musical over the course of several years and 8 Legged entrusted her with considerable resources.  *See* Pls.' Br. 16.  In addition, *Pemberton v. Windsor Leasing Co.* does not support Plaintiffs' argument as the relationship between the parties was that of lessee/tenant and under-tenant, not a theater producer and creative artist, as Plaintiffs mischaracterize it.  58 N.Y.S.2d 292, 295 (Sup. Ct. 1945) (tenant with lease to theatre "agreed to furnish the theatre to . . . under-tenant").  Similarly, in *Mellencamp v. Riva Music, Ltd.*, on which Plaintiffs rely, the court specifically noted that the plaintiff did not "plead any specific conduct or circumstances upon which trust elements are implicated."  698 F. Supp. 1154, 1160 (S.D.N.Y. 1988).  Here, by contrast, Defendants have alleged numerous specific circumstances giving rise to a fiduciary relationship, and the question of whether those circumstances in this case did, in fact, give rise to such a relationship is a question of fact that cannot be decided on a motion to dismiss. *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116, 2009 WL 32122, at *9 (S.D.N.Y. Feb. 9, 2009) (a claim "alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)").

Finally, Plaintiffs do not dispute that this Counterclaim adequately alleges that Taymor knowingly breached her fiduciary duty, resulting in 8 Legged's damages.  *See* Pls.' Br. 15–17.

**B.      Defendants Properly Pleaded the Existence of and Taymor's Breach of a Fiduciary Duty to Goodbye Based on Joint Venture Board Membership**

Defendants have also sufficiently plead that, as a member of the Joint Venture board, Taymor owed, and breached, her duty of loyalty.

1.      Defendants Sufficiently Pleaded Taymor's Fiduciary Duty to Goodbye

A member of a joint venture's board owes the joint venturing parties a duty of loyalty.

- 16 -

*See Carson v. Lynch Multimedia Corp.*, 123 F. Supp. 2d 1254, 1259 (D. Kan. 2000) (board members owed fiduciary duty to joint venture); *cf. Am. Int'l*, 877 N.Y.S.2d at 622 (members of board of directors "undoubtedly owed fiduciary duties of care, loyalty and good faith"). Moreover, a member need not sign an agreement for their participation to give rise to fiduciary duties.  *See United States v. Falcone*, 257 F.3d 226, 234–35 (2d Cir. 2001) (acceptance of fiduciary duty may be implied by parties' relationship); *Dardaganis v. Grace Capital, Inc.*, 664 F. Supp. 105, 111 (S.D.N.Y. 1987) (defendant became a fiduciary despite not being a signatory to agreement), *aff'd sub nom.*, *Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237 (2d Cir. 1989).

Here, Defendants have pleaded that Taymor was a member of the board established by the Joint Venture Agreement.  Countercls. ¶¶ 143, 145.  The "purpose of the Joint Venture Agreement was to 'produce and present the Musical throughout the world,'" and it dictated "how profits arising out of the Musical were to be distributed."  *Id.* ¶ 144.  Defendants also allege that the joint venture's board consisted of six individuals who were "to make all major decisions in connection with the production," and "Taymor was designated as a member of that board and received notices of all board meetings."  *Id.* ¶¶ 145–146; *see also* Spada Aff., Ex. D ¶ 5(A).  As a board member, Taymor was given significant authority over the *Spider-Man* Musical's "major decisions," including, but not limited to, as Plaintiffs assert, financial issues, future companies, casting, marketing, licensing, and "[s]ignificant issues relating to the theater or financing therefore."  Spada Aff., Ex. D ¶ 5(A) ("Major decisions shall involve, *but are not limited to* the following . . ." (emphasis added)); *id.*, Ex. E ¶ 5(A) (same).

Contrary to Plaintiffs' mischaracterization, the Counterclaims set forth detailed allegations regarding how Taymor cast her vote in favor of the critical decision to refinance the *Spider-Man* Musical.  Countercls. ¶ 147.  As the Counterclaims allege, "the show was in dire

need of additional funds," and "[w]ithout such funding, the production would be unable to continue and the *Spider-Man* Musical would never see the stage." *Id.* ¶ 54.  In fact, the Joint Venture Agreement explicitly states that new investors were "unwilling to provide [additional funds] unless the production of the Musical [was] restructured."  Spada Aff., Ex. E ¶ R.  Further, Defendants allege that "[a]s a member of the Joint Venture Agreement board, Hello and Goodbye placed trust and confidence in Taymor," such that "Taymor owed a fiduciary duty of loyalty to act in the best interests of both Hello and Goodbye, and the production, rather than in her own personal interests, and not do anything to undermine the success of the show." Countercls. ¶ 149.  Accordingly, this case is distinguishable from *eBusinessware, Inc. v. Technology Services Group Wealth Management Solutions, LLC*, cited by Plaintiffs, where the only allegation against the counterclaim defendant to support the breach of fiduciary duty claim was that once counterclaim defendant used the term "fiduciary" in an e-mail.  No. 08 Civ. 9101, 2009 WL 5179535, at *7 (S.D.N.Y. Dec. 29, 2009).

Moreover, despite Plaintiffs' attempt to mischaracterize Defendants' allegations, it is clear that Defendants have not merely pleaded that Taymor was unilaterally designated as a board member.  Pls.' Br. 17.  Rather, Defendants allege that Taymor acknowledged and accepted the responsibilities and fiduciary duties attributable to her position.  *See* Countercls. ¶¶ 145–48. In particular, Defendants have alleged that "[w]hen Taymor was unable to attend a board meeting, her attorney, Gelblum, informed the board that Taymor would not be available to participate," and "[o]n at least one such occasion . . . attended a board meeting on Taymor's behalf."  *Id.* ¶ 146.  Further, "Taymor participated in a meeting of the board via telephone and cast her vote as a board member in favor of a proposal for refinancing the show," and she "remained a member of the board until June 2011."  *Id.* ¶¶ 147–48.

Plaintiffs' reliance on the June 17, 2011 letter from Taymor's attorney to Defendants' counsel to claim that Taymor was not a member of the joint venture board, Pls.' Br. 18 n.18, is misplaced.  As indicated in the letter, Defendants had pointed out to Taymor that, as a board member, she owed the Musical fiduciary duties.  Spada Aff., Ex. G.  Clearly well aware that Taymor would be liable for any breach of those duties, Gelblum's self-serving letter, sent months after Taymor had been dismissed from the Musical, does not change the fact that Taymor was aware of the board and voted at and participated in at least one of its meetings.  *See* Countercls. ¶¶ 145–48.  Further, Gelblum admits to attending a board meeting on Taymor's behalf, which belies Taymor's claim that she was not aware of the board.  Spada Aff., Ex. G.  Whether he attended as Taymor's proxy or not, that Gelblum attended the meeting on Taymor's behalf indicates that Taymor actually was a board member, served as a board member and accepted her duties as a board member, only now to attempt to divorce herself from those obligations.

Nor do the cases upon which Plaintiffs seek to rely support their argument.  For example, in *Christ v. Lake Erie Distribs., Inc.*, the court acknowledged that the acceptance of fiduciary obligations could be "either expressed or implied . . . and [s]he is rebuttably presumed to accept upon notification."  273 N.Y.S.2d 878, 883 (Sup. Ct. 1966).  Plaintiffs' other cases are distinguishable from the facts of this case.  In *Marmelstein v. Kehillat New Hempstead*, the plaintiff alleged that a fiduciary duty existed because she "was induced by defendant, who represented himself as an advisor, a father figure and a god, to engage in a sexual relationship as part of a course of sexual therapy which he represented would lead to her achieving her goals of marriage and children."  841 N.Y.S.2d 493, 496 (2007) (internal quotation marks omitted).  In *EBC I, Inc. v. Goldman Sachs & Co.*, the plaintiff alleged that a fiduciary duty existed because the defendant had misled it to underprice its IPO, despite the fact that the defendant's role in the

- 19 -

IPO was as an underwriter and thus an adversary of the plaintiff. 936 N.Y.S.2d 92, 95 (App.

Div. 2011) . In both cases, the alleged duties were imposed unilaterally. Here, by contrast,

Defendants allege that Taymor accepted her duties as a board member, acknowledging as much

by voting on major decisions and sending her attorney to a board meeting on her behalf.

Countercls. ¶¶ 146–47. Moreover, neither case involved a board member.

Further obfuscating the issues, Plaintiffs try to distinguish a corporation from a joint

venture created by contract. Pls.' Br. 19 n.7. As discussed above, however, the proper inquiry

concerns the alleged circumstances and conduct between the parties and whether Defendants

reposed trust or confidence in Taymor. *See St. John's*, 757 F. Supp. 2d at 166; *Pension*, 446 F.

Supp. 2d at 196; *Reed*, 601 F. Supp. at 704; *Am. Int'l Grp., Inc.*, 877 N.Y.S.2d at 624. Clearly,

Defendants' allegations sufficiently plead Taymor's duty.

2.    <u>Defendants Sufficiently Pleaded Taymor's Breach of Her Fiduciary Duty</u>

As stated above, Taymor owed fiduciary duties as a co-bookwriter and as a board

member, and Plaintiffs do not dispute that she breached her duty as a co-bookwriter. The only

remaining issue is whether Defendants have sufficiently pleaded that Taymor breached her

fiduciary obligations as a board member as well. Under New York law, "a breach may be found

in any case in which influence has been acquired and abused, in which confidence has been

reposed and betrayed." *Grund*, 788 F. Supp. 2d at 248 (internal quotation marks omitted). "[I]t

is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose

interests the fiduciary is to protect." *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989); *Am.

Int'l*, 877 N.Y.S.2d at 622 ("In discharging this duty, [a fiduciary is] not permitted to use [her]

position of trust and confidence to further [her] own private interests."). In fact, the New York

Court of Appeals explicitly stated that:

> This is a sensitive and 'inflexible' rule of fidelity . . . requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty.  Included within this rule's broad scope is every situation in which a fiduciary, who is bound to single-mindedly pursue the interests of those to whom a duty of loyalty is owed, deals with a person in such close relation to the fiduciary that possible advantage to such other person might consciously or unconsciously influence the fiduciary's judgment.

*Birnbaum*, 73 N.Y.2d at 466. (emphasis added; citations, alterations and internal quotation marks omitted); *see Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 646 (2d Cir. 2004) (affirming district court decision that plaintiff breached fiduciary duty by not acting in defendant's "best interest").

Here, Defendants allege that Taymor breached her fiduciary duties by "put[ting] her own personal interests ahead of those of the show and refus[ing] to cooperate with members of the production or support changes to the show that would allow the show to be successful." Countercls. ¶ 150; *see also id.* ¶ 7 ("Although the Producers, acclaimed musicians Bono and The Edge . . . and other award-winning members of the production team recognized that dramatic changes to the show needed to be made, Taymor refused to listen to or cooperate with them on proposed changes.").  Defendants also allege:

> [A]lthough Taymor was well aware that the *Spider-Man* Musical was a commercial, for-profit venture that was intended to appeal to a broad audience, Taymor made it is clear that she did not care about ticket sales or the public appeal of the show.  Rather, Taymor's attitude was summed up by her statement that, "I Don't give a f#*! about audience reaction!"

*Id.* ¶ 4.

Although Plaintiffs assert that Taymor's "refus[al] to cooperate with members of the production or support changes to the show" was not related to her role as a board member, Pls.' Br. 19, the Joint Venture Agreement explicitly states that its purpose was "to produce and present the Musical throughout the world," Spada Aff., Ex. D ¶ 1, which Defendants allege would not be possible without changes to the *Spider-Man* Musical's story.  *See* Countercls. ¶¶

- 21 -

64, 92.  As noted above, all major decisions were to be made by the board and the Joint Venture Agreement's list was illustrative, not exclusive.  *See supra* at 17.  Whether decisions concerning major revisions to the *Spider-Man* Musical's story constituted a "major decision" under the Joint Venture Agreement is a question of fact that cannot be decided on a motion to dismiss.

Similarly, contrary to Plaintiff's assertion that self-dealing is required to establish a breach of a fiduciary duty, Pls.' Br. 20, self dealing is merely one example of a breach.  *See Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 274 (2d Cir. 1986) (self-dealing is merely one type of breach of the duty of loyalty); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 669–70 (S.D.N.Y. 2006) ("The duty of loyalty includes an obligation to refrain from self-dealing, to avoid conflicts of interests and the appearance of impropriety, to treat all parties to the case fairly, and to maximize the value of the estate." (internal quotation marks omitted)).  Plaintiffs' cases are not to the contrary.  *Marx v. Akers*, which merely concerns a shareholder's failure to demand a corporate board of directors initiate a lawsuit before commencing a derivative action, only addresses one way in which a board member may breach her duty— "where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally"—but it does not preclude other methods of breach.  *See* 88 N.Y.2d 189, 129 (1996).  Likewise, *Higgins v. New York Stock Exchange, Inc.*, which also involves a shareholder action, simply identifies another method of breach—conflict of interest— without precluding others.  806 N.Y.S.2d 339, 357 (Sup. Ct. 2005).  Nor is it necessary for Taymor to have benefitted economically from her breach.  *See Sanders v. Madison Square Garden, L.P.*, No. 06 Civ. 589, 2007 WL 1933933, at *6 (S.D.N.Y. July 2, 2007) (an "employee breaches her duty of loyalty any time she engages in conduct that is not condoned by her employer"); *Higgins*, 806 N.Y.S.2d at 357 (breach of fiduciary duty exists where "director with

no personal interest in a transaction is otherwise controlled by an interested director").

Also misplaced is Plaintiffs' argument that any of Taymor's actions pursuant to the Co-Bookwriter Agreement are not subject to fiduciary duty scrutiny, Pls.' Br. 20, as "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Grund*, 788 F. Supp. at 250; *see St. John's*, 757 F. Supp. at 166 (contract may define contours of parties' relationship without precluding fiduciary duties); *Kagan v. HMC-New York, Inc.*, 939 N.Y.S.2d 384, 393 (App. Div. 2012) (inappropriate to dismiss fiduciary duty claim despite overlap with allegations of breach of contractual duties).  Plaintiffs' cases actually support this principle.  *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999) (fiduciary duties may arise from a contractual relationship); *EBC*, 5 N.Y.3d at 22 (fiduciary duty claim premised on conduct associated with contractual relationship).

Similarly, Plaintiffs' suggestion that Taymor's breach is excused by Goodbye's alleged authorization of her "conflicting responsibilit[ies]," Pls.' Br. 21, is contradicted by the fact that her co-bookwriter responsibilities were not inconsistent with her board member obligations.  Rather, she owed duties arising from both roles, and thus there was no conflict to "authorize."

Finally, Plaintiffs argue in one conclusory sentence relegated to a footnote that "Goodbye has not alleged facts suggesting that it was harmed by Taymor's conduct."  Pls.' Br. 21 n.8.  Contrary to Plaintiffs' argument, however, Defendants allege that as "a direct and proximate result of Taymor's breach, [they] have been damaged and have suffered actual damages in an amount to be proved at trial."  Countercls. ¶ 151.  Further, damages are implicit in Defendants' allegation that "Taymor put her own personal interests ahead of those of the show and refused to cooperate with members of the production or support changes to the show that would allow the

- 23 -

show to be successful" as her actions prevented the show's commercial success.  *Id.* ¶ 150.  The single case cited by Plaintiffs is not to the contrary, as it does not even discuss whether damages had been sufficiently alleged.  *Meisel v. Grunberg*, 651 F. Supp. 2d 98 (S.D.N.Y. 2009).

## IV.   THE SDC SETTLEMENT DOES NOT BAR DEFENDANTS' COUNTERCLAIMS

As a last resort, Plaintiffs argue that portions of Defendants' breach of contract counterclaim and all of their breach of fiduciary duties counterclaims are barred by the terms of a confidential settlement agreement that 8 Legged entered into with the SDC in connection with a separate arbitration proceeding.  Pls.' Br. 22.  This argument fails for several reasons.

First, the settlement agreement, as well as the September 27, 2011 letter on which Plaintiffs also rely, are outside of the pleadings and thus cannot be considered on a Rule 12(b)(6) motion.  *See Marinoff v. City Coll. of N.Y.*, 63 F. App'x. 530, 531 (2d Cir. 2003) (courts may not consider matters outside the pleadings on a 12(b)(6) motion); *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (on a 12(b)(6) motion, a court "must limit itself to a consideration of the facts that appear on the face of the complaint").

Second, even if this Court considered the settlement agreement to be incorporated into the Counterclaims, the plain language of the settlement agreement shows that, contrary to Plaintiffs' assertions, Pls.' Br. 24, ████████████████████████████████████ ████████████████████████████████████  The settlement agreement settled a dispute concerning ████████████████████████████████████ ████████████████████████████████████████████ ████████████████  This was a separate agreement from the Co-Bookwriter Agreement at issue in this case, and gave rise to a wholly separate claim.  As noted in the settlement agreement, ████████████████████████████████████████████ ████████████████████████████████████████

- 24 -

████████████████████████████████████████████████████████

████████████████    The parties ultimately agreed, however, ████████████████████████

██████████████████████████, and as such, Defendants amended their Counterclaims to

remove the Collaborator Counterclaim as well as to change one word of Paragraph 152 (i.e.,

from "collaborate" to "cooperate").  *Compare* Defs.' Countercls. *with* Defs.' Am. Countercls.

The settlement agreement in the SDC arbitration does not prohibit Defendants from

asserting facts that are relevant to other claims in this litigation, as facts are often relevant to

multiple claims.  *See Kaminsky v. Gamache*, 751 N.Y.S.2d 254, 256 (App. Div. 2002) (release of

claims related to expiration of lease does not resolve claims related to entitlement to occupy

premises, despite same operative facts); *Meyer v. Fanelli*, 698 N.Y.S.2d 311, 311 (App. Div.

1999) (release of plaintiff's personal injury claim did not preclude claim based on defendant's

obligation to repay loans made by plaintiff).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████    Thus, Plaintiffs' claim that Defendants cannot

rely on certain facts to support different claims which are not listed in its release provision is

without merit.  *See Kaminsky*, 751 N.Y.S.2d at 256 (if a release appears "to be limited to only

particular claims, demands, or obligations, the instrument will be operative as to those matters

alone"); *Meyer*, 698 N.Y.S.2d at 311 ("A release may not be read to cover matters which the

parties did not desire or intend to dispose of." (internal quotation marks omitted)).

## **CONCLUSION**

For the reasons above, Plaintiffs' motion to dismiss should be denied.

Dated:  New York, New York  
       April 27, 2012

                                          */s/ Dale M. Cendali*
_____

                                          Dale M. Cendali  
                                          Claudia Ray  
                                          Courtney L. Farkas  
                                          Joshua L. Simmons  
                                          KIRKLAND & ELLIS LLP  
                                          601 Lexington Avenue  
                                          New York, New York 10022  
                                          Telephone: (212) 446-4800  
                                          dale.cendali@kirkland.com  
                                          claudia.ray@kirkland.com  
                                          courtney.farkas@kirkland.com  
                                          joshua.simmons@kirkland.com

                                          Attorneys for Defendants  
                                          8 LEGGED PRODUCTIONS, LLC;  
                                          GOODBYE ENTERTAINMENT, LLC;  
                                          SAVIOR PRODUCTIONS, LLC; MICHAEL  
                                          COHL AND JEREMIAH HARRIS