UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIE TAYMOR and LOH, INC., | Civil Action No. 11-CV-8002 (KBF) |
| Plaintiffs, | |
| v. | ECF Case |
| 8 LEGGED PRODUCTIONS, LLC, HELLO ENTERTAINMENT, LLC, GOODBYE ENTERTAINMENT, LLC, SAVIOR PRODUCTIONS, LLC, MICHAEL COHL, JEREMIAH HARRIS and GLEN BERGER, | |
| Defendants. | |
| GLEN BERGER, | |
| Counterclaim-Plaintiff, | |
| v. | |
| JULIE TAYMOR and LOH, INC., | |
| Counterclaim-Defendants. | |

**DEFENDANT GLEN BERGER'S ANSWER TO
AMENDED COMPLAINT AND COUNTERCLAIM**

Defendant Glen Berger ("Berger"), by his undersigned counsel, Cowan, DeBaets,

Abrahams & Sheppard, LLP, hereby answers the Amended Complaint of plaintiffs Julie Taymor

("Taymor") and LOH, Inc. ("LOH") (collectively, "Plaintiffs") in this action, dated July 9, 2012,

and counterclaims as follows:

## NATURE OF THE ACTION

1.      States that the allegations contained in Paragraph 1 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that Plaintiffs purport to bring an action for copyright infringement and breaches of contract but deny that Plaintiffs are entitled to any relief on those claims.

2.      States that the allegations contained in Paragraph 2 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 2.

3.      States that the allegations contained in Paragraph 3 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations contained in Paragraph 3.

## PARTIES

4.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4, except admits that Taymor is domiciled in this district and that Exhibit D to the Amended Complaint appears to be an agreement between Taymor and Hello Entertainment LLC regarding directing and collaboration services with respect to the *Spider-Man* Musical.

5.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5.

6.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6.

7.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7.

8.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 8.

9.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9.

10.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 10.

11.     States that the allegations contained in Paragraph 11 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations contained in Paragraph 11, except admits that Berger entered into an agreement to write the book of the *Spider-Man* Musical and refers to Exhibit B of the Amended Complaint for an accurate recitation of the contents therein.

## JURISDICTION & VENUE

12.     States that the allegations contained in Paragraph 12 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that the Court has subject matter and supplemental jurisdiction over Plaintiffs' Amended Complaint.

13.     States that the allegations contained in Paragraph 13 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, admits that venue in this District is proper.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

14.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 14.  Admits the remaining allegations contained in Paragraph 14.

15.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15, except denies the allegation that Taymor has "written numerous Broadway productions, motion pictures and operas."

16.    Admits the allegations contained in Paragraph 16, except states that allegations regarding ownership of intellectual property rights in the *Spider-Man* character are conclusions of law as to which no response is required.

17.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17, except admits that Bono and The Edge agreed to work on the project.

18.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18.

19.    Admits the allegations contained in Paragraph 19, but states that the definitions of the "book," "script" or "libretto" of a musical may not apply in every case.

20.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 20.

21.    Denies the allegations set forth in Paragraph 21, except admits that Taymor claims to have authored a written document in 2004 which Plaintiffs incorrectly refer to as a "Treatment," admits that a treatment may be a work of prose, and refers to what Plaintiffs designate as "the Treatment" (the "2004 Treatment") for an accurate recitation of the contents

therein.

22.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 22, except admits that Taymor claimed that she wanted to create an original dramatic work about *Spider-Man* that was engaging, coherent, and well-suited for live performances before diverse Broadway audiences.

23.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23.

24.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24, except admits that the structure of the Musical is a two-act play, and otherwise refers to the 2004 Treatment and other works for an accurate recitation of the contents therein.  Further states that the allegations regarding the concept's originality are conclusions of law as to which no response is required.

25.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25, except admits that hundreds of different characters and storylines have been portrayed in pre-existing *Spider-Man* works, and that preexisting Spider-Man works included over one thousand comic books and a movie.

26.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26, and further states that the "Sinister Six" was a configuration of villains that has been portrayed in the pre-existing *Spider-Man* works.

27.     States that the allegations contained in Paragraph 27 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.

28.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 28.

29.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29, except admits that the character Gwen Stacy did not appear in the 2004 Treatment, and further states that the character Gwen Stacy also did not appear in the pre-existing 2002 *Spider-Man* film (the "First *Spider-Man* Film").

30.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30, and further states that the Harry Osborn character did appear at one time in a *Spider-Man* Musical treatment.

31.     States that the allegations contained in Paragraph 31 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31.

32.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32, except denies the allegation that the 2004 Treatment referred to Arachne as a mezzo-soprano or specified the nature or type of voice of either Arachne or Mary Jane, or any contrast between them.

33.     Admits the allegations in the first sentence of Paragraph 33 that the Greek myth of Arachne (including the myth's themes of hubris and the consequences of having exceptional talents) and an Arachne character have each appeared in the pre-existing *Spider-Man* works, and further denies the remaining allegations in Paragraph 33.

34.     States that the allegations contained in Paragraph 34 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies

that the 2004 Treatment is a treatment of a musical, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34.

35.     States that the allegations contained in Paragraph 35 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35.

36.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36.

37.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 37.

38.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38, except admits that Berger was contracted by the producers to write the book for the *Spider-Man* Musical in 2005 and his position was titled "co-bookwriter" of the Musical.

39.     States that the registration certificate attached as Exhibit A to the Amended Complaint speaks for itself and no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39.

40.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40.

41.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 41.

42.     States that the allegations in Paragraph 42 contain conclusions of law as to which

no responsive pleading is necessary, but to the extent that any response is required, admits that Berger entered into an agreement with Hello Entertainment dated June 22, 2005, states that the agreement attached as Exhibit B to the Amended Complaint speaks for itself, and denies the remaining allegations contained in Paragraph 42 to the extent the allegations are inconsistent with the terms of the agreement.  Further denies Taymor had the sole right to authorize changes to the book of the Musical.

43.     States that the allegations contained in Paragraph 43 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 43.

44.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44.

45.     States that the document referenced as Exhibit C to the Amended Complaint speaks for itself and no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 45.

46.     States that the document referenced in Paragraph 46 speaks for itself and no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 46.

47.     States that the document referenced in Paragraph 47 speaks for itself and no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in

Paragraph 47.

48.     States that the document referenced as Exhibit D to the Amended Complaint speaks for itself and no responsive pleading is necessary, but that to the extent any response is required, admits that an arbitration brought by the Stage Directors and Choreographers Society against the producers has settled, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 48.

49.     Admits the allegations contained in Paragraph 49.

50.     Admits that in or around 2005, Berger met with Taymor to discuss a preliminary draft of the book, denies the remaining allegations set forth in Paragraph 50, and further objects to characterization of the preliminary drafts of the book as "the book."

51.     Denies the allegation set forth in the first sentence of Paragraph 51 that Taymor and Berger created the book of the Musical based on the 2004 Treatment, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 51, but refers to the book for the Musical as it existed in March 2011 before Taymor's departure, which Taymor appears to be claiming as the "Original Book" (the "March 2011 Book") and the 2004 Treatment for a complete and accurate recitation of the contents therein.

52.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 52, and refers to the March 2011 Book for a complete and accurate recitation of the contents therein.

53.     States that the allegations contained in the first sentence of Paragraph 53 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 53, and refers to the written amendment of the original

2004 license agreement between Marvel and Hello for a complete and accurate recitation of the contents therein.

54.     States that the allegations contained in Paragraph 54 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 54, except admits that the March 2011 Book contains elements drawn from the pre-existing *Spider-Man* material.

55.     States that the allegations contained in Paragraph 55 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 55.

56.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 56 and refers to the referenced transcripts for the accuracy of their contents.

57.     Denies the allegations contained in Paragraph 57, except denies knowledge or information sufficient to form a belief as to whether Marvel and the producers have viewed workshops and staged readings of the Musical.

58.     States that the allegations contained in Paragraph 58 contain conclusions of law to which no responsive pleading is necessary, but to the extent any response is required, denies the allegations contained in Paragraph 58, except admits that Berger engaged in negotiations with the producers on a long-form author agreement, but that agreement was never finalized or executed.

59.     States that allegations regarding "independently copyrightable contributions" are conclusions of law as to which no responsive pleading is necessary, but that to the extent any

response is required, denies the allegations in Paragraph 59.

60.     Admits the allegations in Paragraph 60.

61.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 61, except admits that Cohl and Harris took over as lead producers and admits that Cohl and Harris formed 8 Legged, Goodbye, and Savior to continue the production and financing of the Musical.

62.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 62.

63.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 63, and refers to the November 6, 2009 press release for an accurate recitation of the contents therein.

64.     Admits that Berger entered into a written agreement on or about August 24, 2010 and that a copy of that agreement appears to be annexed as Exhibit E to the Amended Complaint, and denies the allegations of Paragraph 64 to the extent it alleges terms inconsistent with the agreement.  Denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 64.

65.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 65, and refers to Exhibit E to the Amended Complaint for the contents therein.

66.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 66.

67.     Denies the allegations in Paragraph 67, except admits that the Musical began rehearsals in or around mid-August 2010, and admits that during the rehearsal period, Berger

continued to write the book of the Musical and continued to work with Taymor in connection with the Musical.

68.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 68.

69.     Admits the allegations in Paragraph 69.

70.     Denies the allegations contained in Paragraph 70, except admits Berger worked with Taymor during the preview period and admits that Berger drafted changes to the book.

71.     Denies the allegations contained in Paragraph 71, except admits that Berger had discussions with Cohl and Harris regarding possible changes to the book and avers that discussions commenced in or about January 2011.  Denies that Taymor's consent was required for Berger to engage in the aforementioned discussions with Cohl and Harris.

72.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 72.

73.     Denies the allegations contained in Paragraph 73, except admits that a meeting was held with Taymor, Cohl, Berger and The Edge at Gelblum's office, with Bono and Harris participating by telephone call and admits that potential changes, of which Taymor was aware, were discussed.

74.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 74.

75.     States that the allegations in Paragraph 75 contain conclusions of law as to which no responsive pleading is necessary, but to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 75, except admits that the March 2011 Book was titled "Spider-Man: Turn off the Dark" and that

the document attached as Exhibit G to the Amended Complaint appears to be a Certificate of Registration with an effective date of October 11, 2011 from the United States Copyright Office for a work titled "Spider-Man: Turn Off the Dark."

76.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 76.

77.    Denies the allegations in Paragraph 77, except admits that on March 9, 2011, it was announced that Philip Wm. McKinley and Roberto Aguirre-Sacasa were joining *Spider-Man's* creative team and that the press release included the quotation: "to help implement new staging and book rewrites, respectively," and admits that Taymor's consent was not obtained but denies that Taymor's consent was required.

78.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 78.

79.    Denies the allegations in Paragraph 79, except admits that on April 17, 2011 *Spider-Man* closed for three weeks, admits that Berger, under his agreement with the producers, worked with Aguirre-Sacasa during the shut-down period, admits that by May 12, 2011 they had produced a new book of the Musical that was different from the March 2011 Book (the "May 2011 Book"), and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in Paragraph 79 regarding Cohl and Harris consulting with and obtaining approval of the Musical's producers.

80.    Denies the allegations in Paragraph 80, except admits that *Spider-Man* re-opened in previews on May 12, 2011 using the May 2011 Book.

81.    States that the allegations contained in Paragraph 81 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies

that the May 2011 Book has been used in the Musical since it reopened on May 12, 2011, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 81.

82.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 82, except admits Taymor has been billed and publicized as co-bookwriter of the Musical.

83.     States that the documents referenced in the allegations as Exhibits H and I to the Amended Complaint speak for themselves and no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 83.

84.     Denies the allegations in Paragraph 84, except admits that *Spider-Man* opened on Broadway on June 14, 2011.

85.     Admits the allegations in Paragraph 85.

86.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 86, except admits that the Tony Awards Administration Committee ruled that Taymor was eligible to be nominated for a 2012 Tony Award for Best Direction of a Musical.

87.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 87, except admits that *Spider-Man* continues to play in the Foxwoods Theatre and regularly grosses in excess of $1.4 million per week, and that Foxwoods is currently Broadway's largest house.

88.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 88, except admits that Berger continues to be paid from

revenues from the Musical.  Further states that the term "use therein of Taymor's copyrighted works" is insufficiently defined and contains conclusions of law to which no responsive pleading is necessary, but that to the extent any response is required as to such term, denies the same.

89.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 89.

90.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 90.

91.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 91.

92.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 92.

93.     Admits the allegations in Paragraph 93 and refers to Plaintiffs' original Complaint for the contents therein.

94.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 94, except admits that Defendants Cohl, Harris, 8 Legged, Goodbye, and Savior filed an Answer and Counterclaims on January 17, 2012 and refers to that Answer and Counterclaims for its contents therein.

95.     Admits the allegations in Paragraph 95.

96.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 96.

97.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 97, except admits that Defendants Cohl, Harris, 8 Legged, Goodbye, and Savior filed an Amended Answer and Counterclaims on February 16, 2012 and

refers to that Amended Answer and Counterclaims for its contents therein.

98.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 98.

99.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 99.

100.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 100.

101.     States that the allegations contained in Paragraph 101 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 101, and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

102.     States that the allegations in Paragraph 102 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 102, and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

103.     Denies the allegations in Paragraph 103 and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

104.     Denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 104, except states that no songs are mentioned in the 2004 Treatment, and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

105.     Denies the allegations in Paragraph 105, admits that Paragraph 105 selectively quotes from the 2004 Treatment, and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.  Further states that the creation of the "Sinister Six"

was depicted in the pre-existing *Spider-Man* works, that the May 2011 Book does not depict the Green Goblin taking control of video monitors, that the themes stated are not exclusive to the 2004 Treatment but instead are existential themes created by Stan Lee and others, and that the quoted language from the May 2011 Book in the fifth bullet point in Paragraph 105 was based on a pre-existing work and was not inspired by or related to the Arachne character.

106.    States that the allegations in Paragraph 106 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 106 and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

107.    Denies the allegations in Paragraph 107, states that the fifth scene of Act Two in the May 2011 Book depicts the character "JJ" Jameson and his newspaper the Daily Bugle criticizing (not acclaiming) Spider-Man, and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

108.    States that the allegations in Paragraph 108 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 108 and refers to the May 2011 Book, the 2004 Treatment, and the First *Spider-Man* Film for an accurate recitation of the contents therein.

109.    States that the allegations in Paragraph 109 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 109 and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

110.    Denies the allegations in Paragraph 110 and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

111.     Denies the allegations in Paragraph 111 and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.  Further states that Spider-Man's decision not to kill the villains himself in the 2004 Treatment was based on pre-existing *Spider-Man* works, including the themes integral to fifty years of comic books.

112.     Denies the allegations in Paragraph 112 and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

113.     Denies the allegations in Paragraph 113 and refers to the May 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

114.     States that the allegations in Paragraph 114 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 114.

115.     States that the allegations in Paragraph 115 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 115.

116.     States that the allegations in Paragraph 116 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 116, states that the May 2011 Book was not based on the 2004 Treatment, and refers to the March 2011 Book and the 2004 Treatment for an accurate recitation of the contents therein.

117.     States that the allegations in Paragraph 117 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 117 and refers to the March 2011 Book and the May 2011 Book for an accurate recitation of the contents therein.

118.     States that the allegations contained in the first three sentences of Paragraph 118 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 118, except admits that the May 2011 Book contains *Spider-Man* characters and refers to the March 2011 and May 2011 Books for a complete and accurate description of the contents therein.  Further denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of Paragraph 118 and refers to the "Playbill" referenced therein for the accuracy of the phrase quoted in the last sentence of Paragraph 118.

119.     States that the allegations contained in Paragraph 119 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 119, except admits that "Arachne" is referenced in Marvel's comic books and admits that Paragraph 119 contains side by side text blocks that appear to quote text describing stage activity, but refers to the March 2011 and May 2011 Books for an accurate recitation of the contents therein.

120.     States that the allegations contained in Paragraph 120 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 120, except admits that Paragraph 120 contains side by side text blocks that appear to quote text from a scene, but refers to the March 2011 and May 2011 Books for an accurate recitation of the contents therein.

121.     States that the allegations contained in Paragraph 121 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 121, except admits that Paragraph 121 contains side by side text blocks that appear to quote text describing a fight between Peter Parker and "bullies," but refers

to the March 2011 and May 2011 Books for an accurate recitation of the contents therein.

122.    States that the allegations contained in Paragraph 122 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 122, except admits that Paragraph 122 contains side by side text blocks that appear to quote text describing a scene involving Peter Parker in class, but refers to the March 2011 and May 2011 Books for an accurate recitation of the contents therein.

123.    States that the allegations contained in Paragraph 123 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 123, except admits that Paragraph 123 contains side by side text blocks that appear to quote text describing a conversation between Dr. Norman Osborn and Emily, but refers to the March 2011 and May 2011 Books for an accurate recitation of the contents therein.

124.    States that the allegations contained in Paragraph 124 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 124, except admits that Paragraph 124 contains side by side text blocks that appear to quote text describing dialogue between character "JJ" Jameson and his newspaper staff, but refers to the March 2011 and May 2011 Books for an accurate recitation of the contents therein.

125.    States that the allegations contained in Paragraph 125 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 125.

126.    Denies the allegations in Paragraph 126, states that the March 2011 and May 2011 Books contain the Arachne character and traditional story of hubris and responsibility that

accompanies great talents from Greek mythology and the pre-existing *Spider-Man* works, and refers to the March 2011 and May 2011 Books for an accurate recitation of the contents therein.

127.    States that the allegations contained in Paragraph 127 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 127.

128.    States that the allegations contained in Paragraph 128 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 128.

129.    States that the allegations contained in Paragraph 129 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 129, states that the March 2011 and May 2011 Books are based on pre-existing *Spider-Man* works, that the May 2011 Book's depiction of the Norman Osborn character and Peter Parker's relationship with Mary Jane Watson are different from the March 2011 Book, and refers to the March 2011 Book and the May 2011 Book for an accurate recitation of the contents therein.

130.    States that the allegations in Paragraph 130 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 130.

131.    Denies the allegations in Paragraph 131.

132.    States that the allegations in Paragraph 132 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the

allegations in Paragraph 132.

133.   Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 133.

134.   Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 134.

135.   Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 135.

136.   States that the allegations contained in Paragraph 136 are conclusions of law to which no responsive pleading is necessary, but to the extent any response is required, denies the allegations in Paragraph 136 as to Berger, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 136 as against other Defendants.

### FIRST CLAIM FOR RELIEF
**Copyright Infringement, 17 U.S.C. § 501-Original Book (Against 8 Legged, Hello, Goodbye, Savior, Cohl and Harris)**

137.   Berger repeats and realleges each and every response to Paragraphs 1-136 above as if fully set forth herein.

138.   – 153.  Plaintiffs' First Claim for Relief is not against Berger, and Berger does not submit an answer to Paragraphs 138-153 of the Amended Complaint.

**SECOND CLAIM FOR RELIEF**
**Copyright Infringement, 17 U.S.C. § 501 – Treatment**
**(Against 8 Legged, Hello, Goodbye, Savior, Cohl and Harris)**

154.    Berger repeats and realleges each and every response to Paragraphs 1 through 153 above as if fully set forth herein.

155. – 166.  Plaintiffs' Second Claim for Relief is not against Berger, and Berger does not submit an answer to Paragraphs 155-166 of the Amended Complaint.

**THIRD CLAIM FOR RELIEF**
**Breach of Contract**
**(Against Hello and 8 Legged)**

167.    Berger repeats and realleges each and every response to Paragraphs 1 through 166 above as if fully set forth herein.

168. – 175.  Plaintiffs' Third Claim for Relief is not against Berger, and Berger does not submit an answer to Paragraphs 168-175 of the Amended Complaint.

**FOURTH CLAIM FOR RELIEF**
**Declaratory Judgment and Injunction – Non-Broadway Productions**
**(Against Hello and 8 Legged)**

176.    Berger repeats and realleges each and every response to Paragraphs 1 through 175 above as if fully set forth herein.

177.    – 183.  Plaintiffs' Fourth Claim for Relief is not against Berger, and Berger does not submit an answer to Paragraphs 177-183 of the Amended Complaint.

**FIFTH CLAIM FOR RELIEF**
**Declaratory Judgment and Injunction – NY Civil Rights Law §§ 50 and 51**
**(Against 8 Legged, Cohl and Harris)**

184.    Berger repeats and realleges each and every response to Paragraphs 1 through 183 above as if fully set forth herein.

185.    – 192.  Plaintiffs' Fifth Claim for Relief is not against Berger, and Berger does not

submit an answer to Paragraphs 185-192 of the Amended Complaint.

## SIXTH CLAIM FOR RELIEF
**Copyright Accounting**
**(Against Berger)**

193.    Berger repeats and realleges each and every response to Paragraphs 1 through 192 above as if fully set forth herein.

194.    States that the registration certificate referenced in Paragraph 194 speaks for itself, and no responsive pleading is necessary but to the extent any response is required, denies the allegations in Paragraph 194, except admits that Berger made independently copyrightable contributions to the March 2011 Book.

195.    Denies the allegations in Paragraph 195.

196.    States that the allegations contained in Paragraph 196 are conclusions of law as to which no responsive pleading is necessary, but that to the extent any response is required, denies the allegations in Paragraph 196.

## DEFENDANT BERGER'S AFFIRMATIVE DEFENSES

197.     Berger makes the following allegations as affirmative defenses against the claim asserted against him without admitting that he bears the burden of persuasion or presentation of evidence on each or any of these matters, and without waiving the right to assert and rely upon other defenses that become available or appear during the course of this action.

### FIRST DEFENSE

198.    The Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

199.    Plaintiffs' claim is barred in whole or in part by the doctrine of unclean hands.

<u>THIRD DEFENSE</u>

200.    Plaintiffs' claim is barred in whole or in part by laches or delay.

<u>FOURTH DEFENSE</u>

201.    Plaintiffs' claim is barred in whole or in part by the doctrine of waiver, estoppel, acquiescence, or express or implied license.

<u>FIFTH DEFENSE</u>

202.    Plaintiffs' claim is barred in whole or in part on the grounds that it is unripe.

<u>SIXTH DEFENSE</u>

203.    Plaintiffs' claim is barred because both LOH and Berger have each entered into separate agreements with the producers regarding the exploitation of the book of the Musical, and thus, to the extent Taymor is held to be a co-author of the March 2011 Book and entitled to an accounting of royalties for her ratable share of the profits realized from licensing the March 2011 Book, such accounting must be made against the producers of the Musical rather than against Berger.

<u>SEVENTH DEFENSE</u>

204.    Plaintiffs' claim is barred against Berger because Berger has not realized profits, beyond his contractually guaranteed minimums, from any licensing of the March 2011 Book.

<u>EIGHTH DEFENSE</u>

205.    Plaintiffs' claim is barred by the doctrine of *de minimis* use.

## DEFENDANT BERGER'S COUNTERCLAIM

### INTRODUCTION

1.      Plaintiffs and counterclaim-defendants Julie Taymor ("Taymor") and LOH, Inc. ("LOH") (together, "Plaintiffs" or "Counterclaim-Defendants")'s sole claim against defendant Glen Berger ("Berger") is one pled in the alternative to their copyright infringement claims relating to the book of the musical *Spider-Man: Turn Off The Dark* (the "Musical") that was used prior to Taymor's departure from the Musical's production in March 2011 (the "March 2011 Book").  Under such claim, Plaintiffs seek an accounting and half of proceeds from unspecified licenses or transfers of rights in the March 2011 Book that Berger allegedly made.

2.      The basis for Plaintiffs' claim against Berger is the claim that Taymor or LOH is a co-author and joint owner of the copyright in and to the March 2011 Book.  In such a case, under the law, she may therefore be entitled to an accounting of her ratable share of profits that Berger has received.

3.      Assuming the Court makes such a ruling that Taymor is a joint owner of the March 2011 Book, Berger would nonetheless be considered a co-author of the March 2011 Book – something that Plaintiffs do not dispute – and thus Berger, as co-author, would be entitled to his ratable share of profits that Taymor receives from any license or transfer of the March 2011 Book, including the elements contained therein.

### PARTIES

4.      Counterclaim-Plaintiff Glen Berger is an individual residing in Saugerties, New York.  Berger is a professional writer.

5.      Upon information and belief, Counterclaim-Defendant Julie Taymor is an individual domiciled in this District.

26

6.     Upon information and belief, Counterclaim-Defendant LOH Inc. is a domestic business corporation organized and existing under the laws of the state of New York and having its principal place of business in this District.  Upon information and belief, LOH is wholly owned by Taymor.

## JURISDICTION AND VENUE

7.     This action asserts a counterclaim arising under New York state law.  This Court has supplemental jurisdiction over such counterclaim pursuant to 28 U.S.C. § 1367.

8.     Upon information and belief, this Court has personal jurisdiction over Taymor and LOH because they reside in this District.  This Court further has personal jurisdiction over Taymor and LOH because they have chosen to avail themselves of the laws and protections of this Court and Berger's counterclaim arises from the same or related series of operative facts that Plaintiffs allege.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## FACTUAL ALLEGATIONS

10.     Spider-Man is a Marvel Comics superhero that, since created in 1962, has appeared in several comic book series, animated and live-action television shows, comic strips and a trilogy of major motion pictures.

11.     In the comic books, Spider-Man is the alter ego of Peter Parker ("Parker"), who as a high-school student is bitten by a radioactive spider, which gives Parker the agility and strength of an arachnid.  With these and other new abilities such as "spider sense" and the ability to launch webs from his wrists, Parker goes from being a teased and taunted geek to becoming a superhero complete with an arch-nemesis (the Green Goblin) and a female confidante and love interest, Mary Jane Watson.

12.     In March 2004, Marvel Enterprises, Inc. ("Marvel") entered into an agreement with Hello Entertainment, LLC ("Hello") to give Hello the right to produce a stage musical based on certain characters, stories and concepts contained in Marvel's *Spider-Man* comic books and other intellectual property.

13.     Upon information and belief, in or around such time, Counterclaim-Defendant Julie Taymor, through her loan-out company LOH, was contracted by Hello to serve as Director and Collaborator of the Musical.  Upon information and belief, she subsequently also became credited as Mask Designer.

14.     Defendant Berger is a professional theater and television writer.  Among his several award-winning plays is *Underneath the Lintel*, which has had over 200 productions worldwide.  Berger has written over 150 episodes for children's television series that have aired on PBS, NBC, and the BBC, including *Arthur* and *Fetch with Ruff Ruffman*, seen weekly by three million viewers.  He has received twelve Emmy nominations and won two Emmy Awards.

15.     On or about June 22, 2005, Berger entered into an agreement with Hello (the "Berger Agreement") pursuant to which he agreed to provide co-writing services in connection with the treatment and/or book of the Musical currently titled "Spiderman: Turn off the Dark" f/k/a "Spider-Man: A Musical Web."

16.     The Berger Agreement provided, *inter alia*, that Berger would draft both a treatment for the Musical (the "Basic Treatment") and, if engaged as a bookwriter, would also draft the book of the Musical. The Berger Agreement required the Basic Treatment to include the story, basic treatment, overall concept, and music style, including the basic storyline, character descriptions, portrayal of the powers, basic personal traits, physical appearance and the living habitat, environment and setting thereof, as well as a scene-by-scene breakdown.

17.     Upon information and belief, Marvel had sole and/or final approval over the elements contained in the Basic Treatment.

18.     Upon information and belief, in or around August 2005, LOH and Hello entered into an agreement regarding royalties and credits as a "co-bookwriter of the Musical."  Upon information and belief, the aforementioned agreement makes no mention of a treatment of any kind, or any services in drafting a treatment or the book.

19.     Berger did not enter into any agreement with either Taymor or LOH regarding the Basic Treatment or book of the Musical, including any copyright interests in or uses of the Basic Treatment or book of the Musical.

20.     Other than with the producers, Berger has no agreement with any third party to license or otherwise transfer rights in the Basic Treatment or in the book of the Musical.  His only royalties for his work on the Basic Treatment and book of the Musical have come in the form of weekly minimums under his contract with the Musical's producers.

21.     Under the Berger Agreement, Berger was to "collaborate with Julie Taymor on bookwriter-related and other creative decisions for the Musical," although ultimately, any proposed treatment for, and book of the Musical, was subject to Hello and Marvel's approval.

22.     Upon information and belief, Marvel required that the Musical would remain consistent with and faithful to the concept, spirit and characterization of the Spider-Man comic books and other licensed property.

23.     At the time Berger joined the production, Taymor provided him with a short document, under three pages, dated July 1, 2004 and entitled "Spider-Man/Caught," which Plaintiffs incorrectly classify as a "treatment" (the "Statement").  The Statement described the plot for a two-act story that incorporated the Greek myth of Arachne as part of the Spider-Man

story.  The myth of Arachne, in which the gods retaliate against Arachne when she bests Athena in a weaving competition, is known for embodying the themes of hubris, arrogance, and the unintended consequences of holding superior talents.  In the Statement, the play opens with a dream scene in which Spider-Man tries to rescue Mary Jane.  Then, the myth of Arachne, a woman under a curse from the goddess Athena that leaves her in spider form at the moment Arachne tries to hang herself, is introduced.   Act One of the Statement covered "the terrain of the first film," including:  "the origins [of] Peter's spider power," his "bullied school days," "love for Mary Jane," the "wrestling scene," the "loss of Uncle Ben, transformation of Norman Osborne to the Green Goblin, newspaper woes etc."   Act Two reverts back to, and focuses on, Arachne, who turns out to be the "villain and nemesis of Spiderman."  She is envious of Peter's "human side," which Arachne does not have.  After we find out that Arachne is responsible for all of Spider-Man's foes, Arachne "lure[s] [Peter] into her web to dance a dance of seduction. She needs to possess him, devour him for her light to shine again . . . she needs his humanity. . . [l]ike the spider that she is, she will mate with Peter and then, we will find out, devour him."  But as Peter is about to kiss Arachne, he kisses Mary Jane instead, which infuriates Arachne and prompts her to sting Peter.  Before being left "stunned and drugged by the venom," Peter "bites" Mary Jane, giving her "new spider powers" that she uses to "climb[] up to the rafters and leap[] in an attack on Arachne."  The Statement concludes asking "[w]ill she be able to save Peter?"

24.     With Taymor's Statement as a jumping-off point, Berger, in consultation with Taymor, set out to draft the Basic Treatment that he was required to prepare under the Berger Agreement.

25.     In accordance with the Berger Agreement, Berger and Taymor submitted a first draft of the treatment for the book of the musical to Hello for Marvel's approval in or about

August 2005.

26.    Per Hello's request, Berger, in consultation with Taymor, revised the treatment and re-submitted the revised treatment to Hello in January 2006, for submission to Marvel.

27.    This treatment contained nearly 20 pages of text, describing 46 scenes in two acts.

28.    In or around August 2006, Berger began working on the book of the Musical.  As had been the parties' course of conduct, Taymor contributed ideas and concepts (including ideas and concepts attributable to her role as Director and Collaborator on the Musical) to Berger via telephone calls, meetings and emails, Berger would write the particular scene they were discussing and send it to her, and then Berger and Taymor would discuss the draft scene over the telephone, in person or through emails.

29.    The book went through several rounds of drafts and rewrites over the next four years, through the end of the rehearsal period in November 2010.

30.    This book was used in the Musical when the Musical opened in previews on November 28, 2010.

31.    After the Musical opened in previews, and through March 2011, further changes to the November 28, 2010 book of the Musical were made.  Upon information and belief, such changes were made to allow the production to effectuate goals relating to the mechanical production that were insufficiently met as of November 28, 2010, as well as to clarify certain aspects of the Musical where the audience appeared to be getting lost.  All of these changes were made by Berger in consultation with Taymor per his agreement with Hello.

32.    Despite these changes, it was apparent from the audience reaction during the preview period that a much more substantial re-writing of the script would be necessary in order to save the Musical from certain closure.  Around Christmastime, Berger raised some of his ideas

with Taymor, but she would not listen to him and told him not to make such suggestions again.

33.     In or around January 2011, Berger discussed with the producers, Bono, The Edge and others whether certain major changes to the book of the Musical could elicit a more positive audience reaction to the Musical's plot and storyline.  They asked Berger to provide proposals on possible ways to address the script, which Berger gave in broad, high-level terms.

34.     However, no new dialogue was written until April 2011, after Taymor left the production, and no dialogue that Taymor had not previously seen and expressed her approval of was used in the Musical until April 2011.

35.     In or around February 2011, the producers discussed the proposals with Taymor, and in late February or early March, Roberto Aguirre-Sacasa ("Aguirre-Sacasa") was hired to work with Berger in writing a new book for the Musical.  Upon information and belief, Aguirre-Sacasa is a comic book writer who has written for Marvel Comics, including for "Spider-Man" comics; he is also a playwright, including working on a recent update of a musical entitled "It's a Bird . . . It's a Plane . . It's Superman!," and has served as a writer for television series including *Big Love* and *Glee*.

36.     Upon information and belief, Plaintiffs have not sought an accounting from Aguirre-Sacasa, nor have brought any other claim against him.

37.     In or around early March 2011, Taymor left the production.  At or around that time, Philip Wm. McKinley ("McKinley") was engaged to replace Taymor as director on the production.  Upon information and belief, McKinley was to implement any changes to the book of the Musical on-stage.

38.     In or around April 2011, the Musical shut down for approximately three weeks to accommodate substantial changes to the Musical, including a new book by Aguirre-Sacasa and

Berger.

39.     On May 12, 2011, the Musical re-opened in previews using a book that Berger and Aguirre-Sacasa wrote together (the "May 2011 Book").

40.     Berger subsequently learned that Taymor had filed and received a Certificate of Registration from the United States Copyright Office for the March 2011 Book.  The March 2011 Book is registered as Reg. No. Pau3-576-391, titled "Spider-Man: Turn Off the Dark."

41.     Upon information and belief, Taymor filed her application for the copyright Certificate of Registration after she ceased involvement with the production of the Musical.

42.     The Certificate of Registration lists Taymor and Berger as Authors of the Work, but expressly excludes lyrics, characters and setting from the Spider-Man comic books, the "Swiss Miss" and "Arachne" characters, and Taymor's Statement.

43.     The Certificate of Registration lists Taymor and Berger as Claimants of the Work.

44.     The preparation and filing of the Certificate of Registration in and to the March 2011 Book with the United States Copyright Office was done without Berger's knowledge, approval or consent.

## **CLAIMS FOR RELIEF**

### COUNT I – COPYRIGHT ACCOUNTING

45.     Berger repeats and realleges the allegations set forth in Paragraphs 1 through 44 above as if fully set forth herein.

46.     Registration No. Pau3-576-391, dated October 11, 2011, for the work titled "Spider-Man: Turn Off the Dark" (which is, upon information and belief, the March 2011 Book) lists Taymor and Berger as joint authors of the Work.

47.     Berger made independently copyrightable contributions to the March 2011 Book.

48.     Upon information and belief, Taymor and/or LOH has received, is receiving, or may receive royalties for her contributions to the Musical (including via her prior roles and Director and Collaborator), which contributions Taymor relies upon as part of her copyright and accounting claims.

49.     If the Court determines that Berger and Taymor or LOH are joint authors of the March 2011 Book, and if Taymor or LOH is found to have received (or be entitled to receive) compensation from the license, transfer, lease, or sale of rights in and to the March 2011 Book to third parties – including but not limited to any transfer or license to the producers and any settlement monies received from her direction, for the results of directing and collaboration services and other independently copyrightable contributions on the Musical to the extent that such may be incorporated into the March 2011 Book – then Berger, as a joint author, is entitled to an accounting and his ratable share of profits obtained by Taymor or LOH as a result of any of the aforementioned license, transfer, sale, or lease of rights in the March 2011 Book.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Defendant Counterclaim-Plaintiff Berger respectfully requests the following relief against Plaintiffs Counterclaim-Defendants Taymor and LOH:

(a)     that all claims against Berger be dismissed in their entirety and that judgment be entered thereupon in favor of Berger;

(b)     in the alternative, if Plaintiffs are held to be entitled to an accounting against Berger, a full and complete accounting of all profits, gains and advantages derived by Plaintiffs from any license, transfer, sale, or lease of any rights in the March 2011 Book; and

(c)     all such other and further relief as is just and proper.

## **JURY DEMAND**

Counterclaim-Plaintiff Berger demands a trial by jury on all issues so triable in this action.

Dated: New York, New York
       July 26, 2012

                       COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP

                       By:   /s/ Eleanor M. Lackman                     
                           Eleanor M. Lackman
                           Nicholas J. Tardif
                           Joshua S. Wolkoff
                           41 Madison Avenue, 34th Floor
                           New York, New York 10010
                           Tel.:  (212) 974-7474
                           Fax:  (212) 974-8474
                           elackman@cdas.com
                           ntardif@cdas.com
                           jwolkoff@cdas.com

                           *Attorneys for Defendant/Counterclaim-Plaintiff*
                           *Glen Berger*