UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JULIE TAYMOR and LOH, INC.,

    Plaintiffs and Counterclaim-Defendants,

    - against -

8 LEGGED PRODUCTIONS, LLC,
GOODBYE ENTERTAINMENT, LLC,
SAVIOR PRODUCTIONS, LLC, MICHAEL
COHL, JEREMIAH HARRIS, and GLEN
BERGER,

    Defendants and Counterclaim-Plaintiffs,

    - and -

HELLO ENTERTAINMENT, LLC,

    Defendant.

11 Civ. 8002 (KBF)

ECF CASE

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HELLO ENTERTAINMENT, LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT**

LANKLER SIFFERT & WOHL LLP
Charles T. Spada (cspada@lswlaw.com)
Matthew G. Coogan (mcoogan@lswlaw.com)
Lauren C. Freundlich (lfreundlich@lswlaw.com)
Patrick C. Toomey (ptoomey@lswlaw.com)

500 Fifth Avenue
New York, NY 10110
(212) 921-8399

*Attorneys for Plaintiffs Julie Taymor
and LOH, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

    A.    Hello Begins Production Of The Musical .................................................. 2

    B.    Hello Forms A Joint Venture With Defendant Goodbye To
    Continue Production Of The Musical And Remains A Managing
    Member And Producer Of The Musical .................................................... 2

    C.    Hello And Goodbye Form Defendant 8 Legged With Hello
    Remaining A Manager Of The Musical's Lead Production
    Company ................................................................................................. 3

    D.    The Musical Begins Public Performances And Defendants
    Authorize Changes To The Book Of The Musical Without
    Plaintiffs' Approval .............................................................................. 4

    E.    Plaintiffs' Lawsuit Against Defendants ................................................. 6

ARGUMENT ................................................................................................... 6

    POINT I ................................................................................................... 7

    PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS CAUSES OF
    ACTION AGAINST DEFENDANT HELLO FOR COPYRIGHT
    INFRINGEMENT ........................................................................................ 7

    A.    Plaintiffs Have Sufficiently Pled That Hello Is Vicariously Liable
    For The Infringement Of Taymor's Copyrights ....................................... 8

        1.    Hello Has A Direct Financial Interest In The Musical ................. 9

        2.    Hello Has The Right And Ability To Supervise The
        Infringing Activities ................................................................. 9

        3.    Hello Need Not Exercise Sole Or Majority Control To Be
        Vicariously Liable For Copyright Infringement ......................... 13

    B.    Plaintiffs Have Sufficiently Pled That Hello Is Contributorily
    Liable For The Infringement Of Taymor's Copyrights ............................ 15

        1.    Hello Obviously Knew Of The Infringing Activities ................. 16

        2.    Hello Induced, Caused, And Materially Contributed To The
        Infringing Conduct .................................................................. 16

i

C.    Plaintiffs' Allegations State A Plausible Claim for Copyright Infringement Against Hello With Respect To Future Productions Of The Musical ...................................................... 18

D.    Plaintiffs Are Entitled To Discovery On Their Infringement Claims ....... 19

POINT II ......................................................................................................... 19

PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS CAUSES OF ACTION AGAINST DEFENDANT HELLO FOR BREACH OF CONTRACT ...................................................................................... 19

A.    Hello's Assignment Of Its Rights And Liabilities To 8 Legged Does Not Extinguish Its Obligations To Plaintiffs Under The 2005 Author Deal Memo ...................................................... 20

1.    Plaintiffs Did Not Release Hello From Its Contractual Obligations ...................................................... 21

2.    There Has Been No Novation Of The 2005 Author Deal Memo ...................................................... 21

3.    The 2010 Amendment Does Not Relieve Hello Of Its Obligations Under The 2005 Author Deal Memo ...................... 22

B.    Plaintiffs State A Justiciable Breach Of Contract Claim Against Hello With Respect To Future Productions Of the Musical .................... 25

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*Arista Records LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010).................................................................15

*Arista Records LLC v. Lime Group LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011).........................................8, 13

*Barr v. Country Motor Car Grp., Inc.*,
  635 N.Y.S.2d 370 (1995)....................................................................20

*Beck v. Mfrs. Hanover Trust Co.*,
  481 N.Y.S.2d 211 (Sup. Ct. 1984)...................................................22

*Broadvision, Inc. v. Gen. Elec. Co.*,
  No. 08 Civ. 1478 (WHP), 2009 WL 1392059 (S.D.N.Y. May 5, 2009) ...............13

*Cleveland v. Caplaw Enters.*,
  448 F.3d 518 (2d Cir. 2006).................................................................6

*Crabshaw Music v. K-Bob's of El Paso, Inc.*,
  744 F. Supp. 763 (W.D. Tex. 1990).................................................11

*Currier, McCabe & Associates, Inc. v. Maher*,
  906 N.Y.S.2d 129 (N.Y. App. Div. 2010) ..........................................24

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*,
  919 F. Supp. 728 (S.D.N.Y. 1996) ...................................................13

*Faulkner v. Nat'l Geographic Soc'y*,
  211 F. Supp. 2d 450 (S.D.N.Y. 2002)..........................................8, 15

*Flaum v. Birnbaum*,
  508 N.Y.S.2d 115 (N.Y. App. Div. 1986) ..........................................21

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989) .........................................................13

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*,
  443 F.2d 1159 (2d Cir. 1971).....................................................8, 9, 15

*Goldome v. Bonuch*,
  493 N.Y.S.2d 22 (N.Y. App. Div. 1985) ..........................................21

*Granite Music Corp. v. Center St. Smoke House, Inc.*,
    786 F. Supp. 2d 716 (W.D.N.Y. 2011) ...................................................................18

*H. M. Kolbe Co. v. Shaff*,
    240 F. Supp. 588 (S.D.N.Y. 1965) ........................................................................13

*Halbe v. Adams*,
    158 N.Y.S. 380 (N.Y. App. Div. 1916) .................................................................21

*In re Cohen*,
    422 B.R. 350 (E.D.N.Y. 2010) ..............................................................................21

*Iorio v. Superior Sound*,
    374 N.Y.S.2d 76 (N.Y. App. Div. 1975) .........................................................20, 24

*John W. Cowper Co. v. CDC-Troy, Inc.*,
    376 N.Y.S.2d 754 (N.Y. App. Div. 1975) .............................................................20

*Levine v. Landy*,
    No. 1:11-CV-1038, 2011 WL 6845886 (N.D.N.Y. Dec. 30, 2011) ........................17

*LTV Corp. v. Aetna Cas. & Sur. Co.*
    *(In re Chateaugay Corp.)*, 116 B.R. 887 (Bankr. S.D.N.Y. 1990) .........................21

*Matthew Bender & Co., Inc. v. West Publ'g Co.*,
    158 F.3d 693 (2d Cir. 1998).....................................................................................15

*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)........................................................................................ passim

*Michael Aram, Inc. v. Laurey, a Division of Strategic Brands*,
    No. 05 Civ. 8380 (CSH), 2006 WL 510527 (S.D.N.Y. Mar. 1, 2006) ...................14

*R.F.M.A.S., Inc. v. Mimi So*,
    619 F. Supp. 2d 39 (S.D.N.Y. 2009).................................................................12, 14

*Raymond v. Marks*,
    No. 96-9337, 1997 WL 345984 (2d Cir. June 24, 1997) ........................................21

*S&L Paving Corp. v. MacMurray Tractor, Inc.*,
    61 Misc. 2d 90, 304 N.Y.S.2d 652 (Sup. Ct. 1969).................................................21

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
    316 F.2d 304 (2d Cir. 1963).................................................................................9, 13

*Software For Moving, Inc. v. Frid*,
    No. 09 Civ 4341 (DLC), 2010 WL 2143670 (S.D.N.Y. May 27, 2010) .................17

*Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*,
   778 F.2d 89 (2d Cir. 1985) ................................................................................8

*Toroy Realty Corp. v. Ronka Realty Corp.*,
   493 N.Y.S.2d 800 (N.Y. App. Div. 1985) ....................................................20, 21

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
   736 F. Supp. 1281 (S.D.N.Y. 1990) ...............................................................21

*United States Media Corp. v. Edde Entm't Corp.*,
   No. 94 CIV. 4849 (MBM), 1998 WL 401532 (S.D.N.Y. July 17, 1998) ..........8, 14

*Ventricelli v. DeGennaro*,
   633 N.Y.S.2d 315 (N.Y. App. Div. 1995) ........................................................21

*Wang v. Chen*,
   No. 89 Civ. 8319 JSM, 1992 WL 7840 (S.D.N.Y. Jan. 10, 1992) ............21, 23, 24

*Warner Bros. Entm't Inc. v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008) ..............................................................18

OTHER AUTHORITIES

22 N.Y. Jur. 2d, Contracts, § 406 ...........................................................................22

6A N.Y. Jur. 2d, Assignments § 75 ........................................................................20

Julie Taymor and LOH, Inc. submit this memorandum of law in opposition to Hello Entertainment, LLC's ("Hello") Motion to Dismiss the Amended Complaint, filed July 26, 2012.

## PRELIMINARY STATEMENT

Defendant Hello, a producer of the hit Broadway musical *Spider-Man: Turn Off the Dark* (the "Musical" or "*Spider-Man*"), moves to dismiss Plaintiffs' claims of copyright infringement and breach of contract against it. Hello argues that it cannot be held liable for Defendants' unlawful use of Taymor's work because Hello "assigned all of its rights and obligations" to the new lead producer and "ceased day-to-day management" of the Musical before the alleged misconduct occurred.

Hello's attempt to distance itself from the events underlying Plaintiffs' claims is belied by reality: Hello remains a producer of the Musical to this day, it is one of the two Managers who control the Musical's lead production company and, through its agents, Hello participates in all major decisions related to the Musical. It also shares substantially in the Musical's profits, with gross ticket receipts amounting to more than $100 million to date.

As set forth in Plaintiffs' Amended Complaint, Hello is liable for the ongoing infringement of Taymor's copyrights because, at a minimum, Hello's continuing role as a producer and manager of the Musical subjects it to vicarious and contributory liability for the direct conduct of others. At this stage, Plaintiffs' allegations of infringement against Hello are sufficient to warrant discovery into the full extent of Hello's participation in the infringing activities. Moreover, under New York law, Hello's assignment of its rights and liabilities does nothing to extinguish its direct contractual obligations to Taymor and LOH, Inc. because Hello does not and cannot point to any release or novation executed by Plaintiffs. For these reasons, Hello's motion to dismiss the Amended Complaint should be denied.

## STATEMENT OF FACTS

**A.     Hello Begins Production Of The Musical**

In 2004, Hello negotiated a licensing agreement with Marvel Entertainment, LLC

("Marvel") for the rights to produce a Musical based on Spider-Man.  (*Id.* ¶¶ 7, 18)  Hello

engaged Paul David Hewson ("Bono") and David Howell Evans ("Edge") of the rock band U2 to

compose music for the production.  (*Id.* ¶ 17)  Taymor agreed to serve as the Musical's director,

collaborator, mask designer, and author of the book of the Musical.  (*Id.* ¶¶ 4, 20, 37)  She wrote

a three-page treatment for the Musical (the "Treatment") and registered it with the United States

Copyright Office in 2005.  (*Id.* ¶¶ 21-39)  Defendant Glen Berger was then engaged as Taymor's

co-bookwriter.  (*Id.* ¶ 38)  In 2005, Hello executed, among other things, deal memoranda with

Taymor and Berger outlining the material terms of their service as co-bookwriters for the

Musical.  (*Id.* ¶¶ 40-48, Ex. B (the "Berger Deal Memo"), Ex. C (the "Author Deal Memo"))

**B.     Hello Forms A Joint Venture With Defendant Goodbye To Continue
        Production Of The Musical And Remains A Managing Member And
        Producer Of The Musical**

In or around 2009, Hello faced financing difficulties and Defendants Michael Cohl and

Jeremiah Harris became the Musical's lead producers.  (*Id.* ¶¶ 60-61)  In connection with their

new roles, Cohl and Harris formed Goodbye Entertainment, LLC ("Goodbye").  (*Id.* ¶ 8)

Whereas Hello previously had been the sole Managing Member of Spider-Man

Broadway LLC—the entity Hello created to finance, operate, and manage the Musical—on

October 1, 2009, Hello and Goodbye entered into a joint venture (the "Joint Venture"), whereby

Hello agreed "to add Goodbye as Managing Member of the [Spider-Man Broadway] LLC and

Goodbye agree[d] to become such Managing Member *with Hello*."  (Declaration of Patrick C.

Toomey ("Toomey Decl."), Ex. A (the "Joint Venture Agreement" or "JVA"), Whereas clause

(emphasis added))  The Joint Venture Agreement provided that all "major decisions" relating to the Musical shall be made by a majority vote of the joint venture's six-person board, of which Hello was named a voting member.  (JVA § 5.A)  In addition to voting rights, Hello also retained substantial profit participation of one-third of the Managing Member's Share of adjusted net profits.  (*Id*. § 6.A)  Hello also received the right to equal billing as a producer of the Musical. (*Id*. § 9.A)  Goodbye was granted sole decision-making authority only over decisions concerning the "day-to-day operations" of the Musical and other "non-major decisions."  (*Id*. § 5.A)

### C.   Hello And Goodbye Form Defendant 8 Legged With Hello Remaining A Manager Of The Musical's Lead Production Company

In or around August 2010, in connection with a restructuring of the Musical's finances, Hello and Goodbye amended the Joint Venture Agreement.  (Am. Compl. ¶ 64; Amended and Restated Heroic Productions Joint Venture Agreement (the "Amended JVA"), attached as Ex. B to the Declaration of Jeffrey P. Weingart ("Weingart Decl."))  Hello and Goodbye also formed Defendant 8 Legged Productions, LLC ("8 Legged") to replace Spider-Man Broadway LLC as the lead production company for the Musical.[1]  (Am. Compl. ¶ 6; Amended JVA, Whereas clause R.1)  By written agreement between Hello and Goodbye, 8 Legged assumed certain of Hello's rights and obligations relating to *Spider-Man*.  (Am. Compl. ¶ 6; Limited Liability Company Operating Agreement of 8 Legged Productions, LLC ("8 Legged Operating Agreement"), attached as Ex. C to the Weingart Decl., ¶ 5.6; Contribution and Exchange Agreement, attached as Ex. D to the Weingart Decl., ¶¶ 2.1, 2.3)  Among other things, Hello and Heroic purportedly contributed to 8 Legged "[a]ll contracts of Heroic and Hello in connection with the operation of the Musical (the 'Musical Contracts'), including, without limitation, all the

---

[1] During this same period, Spider-Man Broadway LLC was renamed Heroic Productions, LLC ("Heroic").  (Amended JVA, Whereas clause B & § 6)

agreements or deal memoranda with directors, writers, composers, lyricists and other creative persons involved in the Musical." (Contribution and Exchange Agreement ¶ 2.1(a))

Significantly, by these same agreements, Hello acquired a new set of rights with respect to the Musical. Hello was designated as one of two Managers of 8 Legged and, in that role, it remains a producer of *Spider-Man* today. (Am. Compl. ¶ 7) As a manager and producer, Hello continues to exercise control over the Musical and is entitled to vote on all "major decisions" related to the Joint Venture and 8 Legged. (Amended JVA § 5.A) Likewise, Hello is entitled to a substantial share of the Musical's profits both on Broadway and in future productions. (Compl. ¶¶ 87-88; Amended JVA §§ 4.C, 4.E, 6, 7.A, 9)

During this same time period, in order to induce additional investors to finance the Musical, Taymor, LOH, Berger, Bono, Edge, 8 Legged, and others entered into written agreements to temporarily restructure their royalty payments under the 2005 deal memoranda (the "2010 Amendment," attached to the Amended Complaint as Exhibit E). (Am. Compl. ¶ 64)

### D. The Musical Begins Public Performances And Defendants Authorize Changes To The Book Of The Musical Without Plaintiffs' Approval

On November 28, 2010, the Musical held its first public preview performance. (*Id.* ¶ 69) Taymor continued to work on changes to the Musical, including working with Berger on revising the book of the Musical. (*Id.* ¶ 70) However, shortly after previews began, Berger, Cohl, Harris and others began to work on revisions to the book without Taymor's knowledge or consent, despite her approval rights over changes to the book. (*Id.* ¶ 71) On February 26, 2011, Berger, Cohl, and Harris informed Taymor of certain changes to the book on which they had been working in secret. (*Id.* ¶ 73)

On March 4, 2011, Taymor and her attorney were summoned to a meeting with Cohl, Harris, Bono, and Edge, who told Taymor that she was being removed from the production and

that a new "creative consultant" and bookwriter were being hired to make changes to her work, including to her book.  (*Id.* ¶ 76)  The last version of the book co-written by Taymor before she was removed from the production is entitled "Spider-Man: Turn Off the Dark" (the "Original Book").  (*Id.* ¶ 75)  It was registered with the U.S. Copyright Office on October 11, 2011.  (*Id.*)

On March 9, 2011, the producers publicly announced that Philip William McKinley and Roberto Aguirre-Sacasa were joining the Musical's creative team "to help implement new staging and book rewrites, respectively."  (*Id.* ¶ 77)  The producers then began to implement the changes to the Original Book that they and Berger secretly had been planning for months.  (*Id.*)  No one sought or obtained Taymor's consent to these changes, despite the producers' knowledge of Taymor's right to approve any changes made to the Original Book.  (*Id.* ¶¶ 74, 77-78)

Following its April 17, 2011 preview performance, *Spider-Man* shut down for approximately three weeks to facilitate book rewrites and restaging.  (*Id.* ¶ 79)  The changes to the book, made without Taymor's approval or consultation, resulted in a revised book (the "Infringing Book"), which was adapted and derived from Taymor's Original Book.  (*Id.*)  The Infringing Book, which has been used in performances since the Musical reopened on May 12, 2011, is copied and derived from Taymor's copyrighted Treatment and her Original Book and is substantially similar to both works.  (*Id.* ¶ 81)  On June 14, 2011, *Spider-Man* officially opened on Broadway using the Infringing Book.  (*Id.* ¶ 84)  Hello and its fellow producers have derived and continue to derive substantial revenues, profits, fees, and other benefits and advantages from the Musical and from the use therein of Taymor's copyrighted works.  (*Id.* ¶ 87-88)

From November 2010, when the Musical opened in previews, through the present, the producers have continuously billed Taymor as co-bookwriter of the Musical.  (*Id.* ¶ 82-83)  Nevertheless, they refuse to compensate Taymor as she is entitled.  (*Id*. ¶¶ 82, 92)

### E.      Plaintiffs' Lawsuit Against Defendants

On November 8, 2011, Plaintiffs filed the Complaint in this action against Defendants 8 Legged, Hello, Goodbye, Savior Productions, LLC, Cohl, Harris, and Berger.  On July 9, 2012, Plaintiffs filed their Amended Complaint.

Hello's motion to dismiss concerns Plaintiffs' causes of action against Hello and other defendants for copyright infringement of the Original Book (First Claim – Am. Compl. ¶¶ 137-153), copyright infringement of the Treatment (Second Claim – *id.* ¶¶ 154-66), breach of contract (Third Claim – *id.* ¶¶ 167–75), and for a declaratory judgment and injunction restraining future non-Broadway productions (Fourth Claim – *id.* ¶¶ 176-83).

Hello moves to dismiss the claims against it on the ground that it assigned its rights and obligations relating to *Spider-Man* to 8 Legged and has ceased day-to-day involvement with the Musical.  (Hello Br. at 1)  Despite Hello's efforts to minimize its continuing role as a producer of *Spider-Man*, Plaintiffs' allegations show that Hello retains significant supervisory powers and financial rights related to the Musical.  Plaintiffs have alleged facts sufficient to hold Hello liable for its copyright infringement and breaches of contract.  Hello's motion to dismiss should be denied.

## ARGUMENT

On a motion to dismiss, a court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A complaint cannot be dismissed merely because it appears unlikely that the plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 556, 563 n.8. Instead, a court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556.

<u>POINT I</u>

**PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS CAUSES OF ACTION AGAINST DEFENDANT HELLO FOR COPYRIGHT INFRINGEMENT**

Plaintiffs' Amended Complaint sets forth in detail how the various Defendants participated in the infringement of Taymor's copyrights with respect to both the Original Book and the Treatment. (Am. Compl. ¶¶ 79-81, 84, 87-91, 133-36, 142-47, 159-60, 179) Plaintiffs allege that Hello, as a Manager of 8 Legged and a board member of the Joint Venture, knew of and caused, induced, and contributed to Defendants' infringement of Taymor's copyrights, and had the ability to direct and control the infringing activities. (*Id.* ¶¶ 7, 89-91, 100, 146, 179)

In its motion, Hello argues that Plaintiffs have not sufficiently alleged causes of action against it for copyright infringement because: (1) "at the time that the allegedly infringing conduct first occurred in December 2010, Hello Entertainment no longer had <u>any</u> role in the day-to-day operations of the Musical and 8 Legged had assumed <u>all</u> of Hello Entertainment's rights and obligations"; and (2) while Plaintiffs' Amended Complaint specifically identifies infringing conduct by other defendants, it fails to identify specific infringing conduct by Hello. (Hello Br. at 8, 11 (emphasis in original)).[2]

---

[2] In its renewed motion, Hello spends considerable space referring back to allegations in Plaintiffs' original Complaint, rather than addressing or rebutting the factual allegations in the Amended Complaint now before the Court. (Hello Br. at 1-2, 4-5, 7, 8) Contrary to Hello's suggestion, Plaintiffs have never

Discovery remains underway, with no testimony to date, so Plaintiffs do not yet know the extent of Hello's direct participation in the infringing conduct.  It is well established, however, that the the Copyright Act's protections are broad and allow for liability to be imposed upon parties, like Hello, even in the absence of allegations that the party directly committed the infringement.  *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005).  In this Circuit, "[a]ll persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers."  *Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985).

A.    **Plaintiffs Have Sufficiently Pled That Hello Is Vicariously Liable For The Infringement Of Taymor's Copyrights**

Vicarious liability for copyright infringement may be imposed where a party "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities."  *Faulkner v. Nat'l Geographic Soc'y,* 211 F. Supp. 2d 450, 472 (S.D.N.Y. 2002) (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).  Beneficiaries of infringing activity may be held liable where they have the power to influence or control the direct infringer but decline to do so.  *See Arista Records LLC v. Lime Group LLC,* 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011); *see also United States Media Corp. v. Edde Entm't Corp.*, No. 94 CIV. 4849 (MBM), 1998 WL 401532 at *7-8 (S.D.N.Y. July 17, 1998) (finding minority shareholder liable where he had "ability to influence corporate policy" and concurred in the infringing conduct).  "When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright monopoly is being impaired . . . the purposes of

---

alleged that Hello ceased all involvement in, or ceded all control over, the Musical. The Amended Complaint's specific allegations as to Hello's continuing involvement with the Musical and the agreements before the Court leave no doubt as to Plaintiffs' position, nor its factual basis. (Am. Compl. ¶¶ 7, 89-91, 100, 146)

copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).

In this case, Plaintiffs have alleged sufficient facts to state a claim that Hello is vicariously liable for copyright infringement.

### 1.      Hello Has A Direct Financial Interest In The Musical

Hello does not dispute that it has a direct and substantial financial interest in the Musical. (Am. Compl. ¶ 88)  In fact, the very agreements that Hello relies on bear out the significant financial stake that Hello has in the Musical's weekly revenues of $1.5 million or more.  By virtue of these agreements, Hello is entitled to 3 percent of certain adjusted net profits generated by the Musical, plus a management fee based on a percentage of weekly operating profits. (Amended JVA §§ 4.C, 4.E, 9; 8 Legged Operating Agreement, Schedule D)  This financial interest extends to certain future productions of the Musical, in which Hello is guaranteed a minimum share of net adjusted profits.  (Amended JVA §§ 6, 7.A)

### 2.      Hello Has The Right And Ability To Supervise The Infringing Activities

As a producer of the Musical, and by virtue of the corporate powers described below, Hello also has the "right and ability to supervise" the infringing conduct.  *Gershwin*, 443 F.2d at 1162; *see Grokster,* 545 U.S. at 930 (holding that one infringes a copyright vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it).  To this day, Hello acts as a Manager, Partner, and board member of the Hello-Goodbye Joint Venture, which is currently engaged in "produc[ing] and present[ing] the Musical throughout the world." (Amended JVA, Introduction, § 1)  In these capacities, Hello exercises voting power over "[a]ll major decisions" relating to the Musical—including, but not limited to, future productions of the Musical, casting for major roles in the Musical, and any DVD or film broadcast of the Musical.

(*Id*. § 5.A)  Hello also acts as one of the two Managers of 8 Legged, the lead production company, whose operating rules provide that "[t]he Managers are solely responsible for the management of the Company's business with all the rights and powers generally conferred on managers of limited liability companies under the laws of the State of New York."  (8 Legged Operating Agreement ¶¶ 1.1.27, 5.2)

Beyond the powers above, Hello continues to exercise other forms of supervision and control over the management of the Musical and 8 Legged.  The Amended Joint Venture Agreement provides that "[a]ny change in control which is to be transferred to anyone outside of the [] Joint Venture shall be subject to unanimous consent of Goodbye Entertainment and Hello Entertainment."  (Amended JVA § 5.B)  The 8 Legged Operating Agreement, executed by David Garfinkle on behalf of Hello, states that Goodbye requires the consent of Hello to name one or more additional Managers.  (8 Legged Operating Agreement ¶ 10.2)  The Amended Joint Venture Agreement, moreover, grants to Hello a non-assignable "right of consultation in any matters in which Marvel and/or Sony have consultation or approval rights and the right to attend material/formal production, advertising and creative meetings and rehearsals/auditions where it is appropriate for all producers to be present." (Amended JVA § 5.D)  In short, Hello's purported transfer of its rights and liabilities relating to *Spider-Man* did not, as Hello would have the Court believe, end its involvement in the Musical.[3]  To the contrary, this assignment granted Hello a new set of rights and guaranteed Hello a continuing role as a producer of the refinanced Musical.

---

[3] Hello attempts to make much of the fact that Plaintiffs removed the word "all" from Paragraph 6 of their Original Complaint in describing the assumption of rights and obligations by 8 Legged.  But Hello did not give up all of its rights in the Musical in 2009, as it would have the Court believe; it merely swapped those rights for an arrangement in which it shares control as Manager of 8 Legged.  As Plaintiffs' Amended Complaint makes clear, Hello transferred certain of its rights and obligations to 8 Legged *in exchange for* a new set of supervisory powers and financial rights related to the Musical.  (Amended JVA §§ 4-7; 8 Legged Operating Agreement)

Together, these wide-ranging corporate powers and financial interests belie Hello's argument that its liability terminated with the transfer of rights to 8 Legged in 2009.  Hello selectively cites to the Amended Joint Venture Agreement for its provision that "Goodbye Entertainment will be solely responsible for the day-to-day management of the Musical."  (Hello Br. at 9 (citing Amended JVA, Whereas clause R.1)).  This division of responsibilities between the joint venturers, however, does nothing to diminish the overarching fact that "[t]he managers of the New Production Company [are] Hello Entertainment and Goodbye Entertainment." (Amended JVA, Whereas clause R.1)  Hello need not exercise day-to-day control over the Musical to be liable.  In *Crabshaw Music v. K-Bob's of El Paso, Inc.*, 744 F. Supp. 763 (W.D. Tex. 1990), for example, the court found that an absentee owner could be vicariously liable because he "retain[ed] the right and ability to supervise the restaurant" even though he "may not have asserted his authority directly over the day to day affairs of [the business]."  *Id.* at 767-68. Hello continues to exercise voting rights on all "Major Decisions," as well as consultation rights on creative and licensing matters.

Consistent with these rights, Hello's conduct during the period following Taymor's dismissal shows that it repeatedly participated in meetings, major decisions, and other activities that enabled the infringing Musical to go forward.  (Am. Compl. ¶¶ 89, 90)  These activities include board meetings for the Hello-Goodbye Joint Venture during the crucial period after Taymor's dismissal, convened on, among other dates, April 8, 2011, May 1, 2011, and June 10, 2011.  (*Id.*)  During this same period, Hello's power to control and influence board decisions expanded markedly, with the resignation of Bono and Edge in June 2011.  (*Id.* ¶ 91)  In addition, agents and employees of Hello continue to be involved in the day-to-day operations of the Musical.  For example, Anne Tanaka, an employee or agent of Hello, remains actively involved

with the day-to-day operations of the Musical as an Associate Producer.  (*Id.* ¶ 89)  Likewise, David Garfinkle and Adam Silberman—both employees or agents of Hello—continue to be involved with the Musical and held out as a Producer and Executive Producer of the Musical, respectively.  (*Id.*)

Hello's argument rests on the premise that a series of critical decisions about the Musical's fate fell completely within the category of "day-to-day management" activities reserved to Goodbye: namely, the decisions to (i) dismiss Taymor—a central member of the Musical's creative team—after public performances had already begun; (ii) temporarily shut down public performances of the multi-million-dollar Musical; (iii) hire a new bookwriter; (iv) create an unauthorized derivative work from the book co-written by Plaintiffs, in derogation of the sole approval rights Hello had granted to plaintiffs; (v) raise millions of additional dollars to finance the temporary shutdown; and (vi) resume performances using the Infringing Book. Certainly, Plaintiffs' contention that these matters were "major decisions" in which Hello participated is plausible in the face of Hello's motion to dismiss.[4]

Plaintiffs maintain that, by voting on or otherwise authorizing any one of these decisions, Hello had the ability to exercise influence or control over the infringement of Taymor's works. At the very least, Plaintiffs are entitled to discovery into the full scope of Hello's decision-making authority as a producer of the Musical and a Manager of 8 Legged and the Joint Venture—as well as Hello's actual participation in any of the decisions set forth above.  *See R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 71-72 (S.D.N.Y. 2009) (refusing to dismiss a claim of vicarious infringement based on supervisory powers granted in joint venture

---

[4] The Amended Joint Venture Agreement does not set forth an exhaustive list of decisions requiring a board vote.  Instead, the agreement provides a handful of examples, stating, "Major Decisions shall involve, but are not limited to the following . . . ."  (Amended JVA § 5.A)  Among other things, Plaintiffs are entitled to discovery to establish the parties' intent as to the meaning of "Major Decisions" as well as their practice under that provision.

agreement).  This participation would have afforded Hello an opportunity to halt or prevent the

infringing activities; having failed to do so, it is properly subject to vicarious liability.  *See*

*Grokster*, 545 U.S. at 930; *Arista Records LLC*, 784 F. Supp. 2d at 435.

### 3.   Hello Need Not Exercise Sole Or Majority Control To Be Vicariously Liable For Copyright Infringement

Hello's argument that the rights borne out in these agreements do not confer sufficient

control to subject Hello to vicarious liability misstates the law.  Plaintiffs are not required to

allege that Hello has complete or even majority control over 8 Legged or the Musical, only the

"right and ability to supervise" the infringing conduct.  *Shapiro*, 316 F.2d at 307.  While some

cases have held that the mere existence of a parent-subsidiary relationship is insufficient to

impose vicarious liability, Hello's liability in this case is premised on much more than its legal

status.  As detailed in the Amended Complaint, Hello continues to have a hands-on role in 8

Legged and all major decisions related to the Musical, such that it does, in fact, supervise the

infringing activities and has been well aware of those activities from their inception.  (Am.

Compl. ¶¶ 7, 66, 79, 88-91, 100, 146, 179)  In this way, the present allegations and agreements

show the type of "substantial and continuing connection" between Hello and the infringing

Musical necessary to support a claim for vicarious liability.[5]  *Frank Music Corp. v. Metro-*

*Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989); *see also Broadvision, Inc. v. Gen.*

*Elec. Co.*, No. 08 Civ. 1478 (WHP), 2009 WL 1392059, at *4 (S.D.N.Y. May 5, 2009) (looking

for "some continuing connection" between parent and subsidiary in regard to the infringing

activity).

---

[5] Hello is simply wrong that the corporate veil somehow shields it from liability in this instance. Numerous cases hold that the corporate form does not insulate a defendant from liability where it participated in or had the ability to supervise the infringing conduct.  *See, e.g., Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 732 (S.D.N.Y. 1996) (citing cases); *H. M. Kolbe Co. v. Shaff*, 240 F. Supp. 588, 589-90 (S.D.N.Y. 1965) (member of board of directors may be liable).

The fact that Hello does not control a majority of the joint venture board also cannot save it, particularly where Hello exerts other forms of influence over the Musical, has concurred in the decisions taken by the full board, and has made no effort to halt the infringing activities.  (Am. Compl. ¶¶ 89-91)  Under these circumstances, New York courts take a close factual view—they do not view majority control as a prerequisite to liability.  For example, in *United States Media Corp. v. Edde Entm't Corp.*, the court held that a defendant with a 25 percent ownership interest in the infringing entity could be held vicariously liable where he had "the ability to influence corporate policy" and the decision to infringe "represent[ed] a consensus with his fellow shareholder as to how the business of the company should be conducted."  No. 94 Civ. 4849 (MBM), 1998 WL 401532, at *7-8 (S.D.N.Y. July 17, 1998).[6]  Similarly, in *R.F.M.A.S., Inc. v. Mimi So*, a case remarkably like this one, the court refused to dismiss a claim of vicarious infringement against the minority shareholder in a joint venture where the venture's operating agreements granted it significant supervisory powers.  619 F. Supp. 2d 39, 71-72 (S.D.N.Y. 2009).[7]  Like Hello, the defendant in that case sought to distance itself from the infringing entity in court, arguing that it had no power to supervise or control the misconduct despite the contractual evidence to the contrary.  Crucially, plaintiffs were permitted to take discovery into the defendant's actual participation in the infringing activity and, ultimately, the matter was set for trial.  *Id*.  As in *R.F.M.A.S.*, Hello's status as one of several members of a board does not

---

[6] Imposing liability on a board member or shareholder who wields influence over the affairs of an entity and actively supports the infringing conduct, as the court did in *Edde*, would not extend liability to anyone who "happened to be on a board of directors" of a company that committed infringement, as Hello suggests.  (Hello Br. at 12)  For instance, a board member who sought to halt the infringing conduct, but proved unsuccessful, would not be vicariously liable.  But that is not what Hello is alleged to have done in this case.

[7] *See also Michael Aram, Inc. v. Laurey, a Division of Strategic Brands*, No. 05 Civ. 8380 (CSH), 2006 WL 510527, at *2 n.1 (S.D.N.Y. Mar. 1, 2006) (declining to dismiss claim for vicarious copyright infringement where plaintiff alleged that defendant was the president of the infringing entity, indicating "a certain level of control or supervision and a financial stake in the exploitation of" the subject works).

create a *per se* bar to liability, particularly in the face of Hello's many powers under the relevant agreements.[8]   Indeed, Hello is one of only two Managers of 8 Legged, and in this role it continues to have substantial involvement and decision-making authority in the production.

Despite its managerial rights and supervisory role, Hello has made no effort to halt or prevent the infringement of Taymor's Treatment and Original Book.  Instead, as Plaintiffs allege, Hello has permitted the performances to continue while it stands to profit from the ongoing infringement.  (Am. Compl. ¶ 88)  Plaintiffs have stated plausible claims for vicarious copyright infringement against Hello.

**B.   Plaintiffs Have Sufficiently Pled That Hello Is Contributorily Liable For The Infringement Of Taymor's Copyrights**

Contributory liability for copyright infringement may be imposed on a party "who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another."  *Faulkner*, 409 F.3d at 40; *Gershwin*, 443 F.2d at 1162.  Contributory liability may be premised on (1) "personal conduct that encourages or assists the infringement," *Arista Records LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010), or (2) provision of machinery or goods that facilitate the infringing conduct.  *See Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998).  Applying these standards, Hello's continuing role and activities as a producer of the Musical and a Manager of 8 Legged plainly support a claim for contributory copyright infringement.

---

[8] Other cases have held a defendant vicariously liable even where it did not have *any* formal control or voting power over the infringing conduct.  In *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971), for example, the Second Circuit found that a company could be vicariously liable "although [it] had no formal power to control either the local association or the artists for whom it served as agent" because it was clear that the defendant "was in a position to police the infringing conduct of its artists." *Id.* at 1163.

### 1.     Hello Obviously Knew Of The Infringing Activities

Hello does not dispute that it had, and continues to have, knowledge of the ongoing infringement alleged by Plaintiffs.  It would defy belief if Hello, as a Manager and board member of the Joint Venture, claimed that it was not well aware of the events encompassing the infringement of Taymor's copyrighted work.  Furthermore, the immense publicity surrounding Taymor's dismissal from the Musical and ensuing events make it reasonable to infer that Hello knew of the infringement.

### 2.     Hello Induced, Caused, And Materially Contributed To The Infringing Conduct

Hello is a cause of and a contributor to the infringing activities.  As Manager of 8 Legged and a voting member of the Joint Venture board (Am. Compl. ¶¶ 89, 91, 146), Hello has had an indispensable role in producing *Spider-Man* and inducing the infringement of Taymor's work.  Hello admits that it made at least one crucial contribution to the joint venture: contributing the rights to present "a live dramatico-musical stage play based on the comic book character known as 'Spider-Man'" (Amended JVA, Whereas clause A), as well as Hello's assets relating to the exploitation of those rights (Contribution and Exchange Agreement ¶ 2.1.).  (Hello Br. at 1-2, 4)

Most significantly, even after its contribution of rights, Hello has remained closely involved in production of the Musical.  (Am. Compl. ¶¶ 7, 89-91, 146, 179)  Hello is entitled to weigh in on creative and licensing decisions, attend production meetings and rehearsals, and reap profits from the Musical.  *See* Section I.A, *supra*.  Likewise, as a Manager and board member of the Joint Venture, Hello participates in and votes on "[a]ll major decisions" relating to the Musical.  (Amended JVA § 5.A; 8 Legged Operating Agreement § 5.2)

Given these rights, it is inconceivable that Hello had no part in authorizing or approving the ouster of the Musical's director and co-bookwriter and the decision to overhaul the Original

Book, which required millions of additional dollars and a shutdown of all paid performances for a span of three weeks.  If Hello supported any of these decisions, as Plaintiffs allege it did, Hello is a cause of the ongoing infringement for which it may be held contributorily liable.  *See, e.g.*, *Levine v. Landy*, No. 1:11-CV-1038, 2011 WL 6845886, at *6 (N.D.N.Y. Dec. 30, 2011) (denying motion to dismiss contributory infringement claim where defendants copied, distributed, and published, caused to have published, or induced the publication of copyrighted works); *Software For Moving, Inc. v. Frid*, No. 09 Civ 4341 (DLC), 2010 WL 2143670, at *3 (S.D.N.Y. May 27, 2010) (holding that amended complaint contained sufficient allegations to suggest that defendant may be held liable as a contributory infringer where it assisted another defendant in gaining access to copies of protected material).

On this theory as well, Plaintiffs are entitled to discovery into the full scope of Hello's decision-making authority as a producer of the Musical and a Manager of 8 Legged.  Plaintiffs should have the opportunity to confirm that, as alleged, Hello caused the ongoing infringement by voting to approve or otherwise authorizing: (i) Taymor's dismissal as co-bookwriter; (ii) the decision to alter the Original Book of the Musical without Taymor's authorization; (iii) the hiring of Aguirre-Sacasa to implement changes to the Original Book; (iv) the raising of millions of dollars to finance the temporary shutdown; (v) the use of Taymor's copyrighted work in current and future productions of the Musical; and (vi) the refusal to pay Taymor's co-bookwriter royalties.  Hello's participation in any one of these events would amount to a cause or material contribution to the infringement of Taymor's copyrighted works.  *See Grokster*, 545 U.S. at 930 ("One infringes contributorily by intentionally inducing or encouraging direct infringement.").  These factual issues—which implicate Hello's decision-making role in matters central to the infringement—preclude dismissal of Plaintiffs' infringement claims against Hello.  Plaintiffs'

allegations, in tandem with the agreements presently before the Court, are more than sufficient to make out a plausible claim for contributory copyright infringement.

### C.   Plaintiffs' Allegations State A Plausible Claim for Copyright Infringement Against Hello With Respect To Future Productions Of The Musical

Finally, Hello protests that "all of [its] rights regarding the Musical were assigned to 8 Legged" and that it thus "has no contractual or legal right to make decisions regarding the licensing of a production of the Musical in an off-Broadway venue." (Hello Br. at 17)  These assertions are incredible.  Hello—in its role as Manager—exercises voting power over future productions of the Musical, including "with whom, where, and when" such productions are mounted.  (Amended JVA § 5.A)  Hello also has a direct financial stake in future non-Broadway productions of the Musical.  In particular, Hello is guaranteed the right to finance and invest in certain non-Broadway productions, including "the right to invest up to 20% of the capital required to produce a Touring Production" and, in exchange, "to receive its pro-rata . . . share of the producer's Adjusted Net Profits." (*Id*. § 6).  At the same time, absent any further investment, Hello is entitled to receive part of the adjusted net profits generated by productions of the Musical other than the New York production or Touring Productions.  (*Id.* § 7.A).

For this reason, and those stated above, Plaintiffs have sufficiently pled that Hello is vicariously and contributorily liable for copyright infringement with respect to future productions of the Musical.  *See, e.g.*, *Granite Music Corp. v. Center St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 730 (W.D.N.Y. 2011) (finding permanent injunction necessary to prevent bar and its owners from future unauthorized performances of copyrighted musical compositions); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (awarding injunctive relief for copyright infringement arising out of the planned publication of an encyclopedia where, absent an injunction, defendant was likely to infringe in the future).

**D.     Plaintiffs Are Entitled To Discovery On Their Infringement Claims**

As described above, Hello's role in major decisions concerning the Musical—as a matter of practice—requires discovery that precludes the granting of Hello's motion.  *See* Section I.A-C, *supra*.  In addition to examining those facts, Plaintiffs are entitled to establish whether any agreements confer additional rights on Hello in relation to the Musical, and whether the agreements available to Plaintiffs at the time of their Amended Complaint have been amended or superseded.  Similarly, Plaintiffs are entitled to inquire into any affirmative steps that Hello has taken to authorize or license future productions of the Musical, which would constitute a separate and distinct infringement.  At a minimum, Plaintiffs have pled sufficient facts to "raise a reasonable expectation that discovery will reveal evidence" of Hello's participation in and contribution to the infringing activities.  *Twombly*, 550 U.S. at 556.

**POINT II**

**PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS CAUSES OF ACTION AGAINST DEFENDANT HELLO FOR BREACH OF CONTRACT**

Plaintiffs allege that the Author Deal Memo and 2010 Amendment are valid and enforceable contracts that Defendants Hello and 8 Legged have breached by, among other things: (a) failing to pay royalties to Taymor and LOH, including, at a minimum, Taymor's continuing guaranteed minimum weekly royalty of $2,917.50 per eight-performance week; and (b) failing to obtain Taymor's approval prior to making changes to the Original Book.  (Am. Compl. ¶ 170) Plaintiffs also allege that Hello and 8 Legged have breached their obligations under the Berger Deal Memo, of which Taymor is a third-party beneficiary.  (*Id.* ¶ 172)  Plaintiffs' declaratory judgment and injunction claim to prohibit subsequent non-Broadway productions of the Musical is based on the Author Deal Memo between Hello and Plaintiffs, which grants Taymor approval

19

over dispositions of rights to the Musical, such as the licensing or production of the Musical in venues other than on Broadway.  *(Id.* ¶¶ 176-183)

> **A.   Hello's Assignment Of Its Rights And Liabilities To 8 Legged Does Not Extinguish Its Obligations To Plaintiffs Under The 2005 Author Deal Memo**

Hello seeks to avoid its obligations under the 2005 Author Deal Memo by arguing that it assigned all of its rights and obligations in the Musical to 8 Legged via the Joint Venture Agreements and the Contribution and Exchange Agreement.  (Hello Br. at 1, 12-13)  Under New York law, however, Hello's assignment does not extinguish its contractual obligations to Plaintiffs absent a release or novation.  Significantly, Hello cannot point to any such release or novation.  As a consequence, the 2005 Author Deal Memo is a valid and enforceable contract with Plaintiffs, obligating Hello, among other things, to: (a) pay royalties to Plaintiffs for the use of Taymor's book; and (b) obtain Plaintiffs' approval prior to making changes to the Original Book.  (Am. Compl. ¶¶ 45-47, 170)

In New York, when a contract is assigned to a third party, the obligations thereunder can either be fully transferred to the assignee or remain with both the assignor and the assignee.  *See Iorio v. Superior Sound*, 374 N.Y.S.2d 76 (N.Y. App. Div. 1975).  If the parties intend to relieve the obligor of its promise, they must consent by a release or a novation.  *Toroy Realty Corp. v. Ronka Realty Corp.*, 493 N.Y.S.2d 800, 802 (N.Y. App. Div. 1985) (citing, *inter alia*, *John W. Cowper Co. v. CDC-Troy, Inc.*, 376 N.Y.S.2d 754 (N.Y. App. Div. 1975)).  "It is a well-established rule that a party to a contract cannot be relieved of obligations arising under the contract by assigning the contract, unless the contract specifically provides for a release from liability upon its assignment."  6A N.Y. Jur. 2d, Assignments § 75; *see Barr v. Country Motor Car Grp., Inc.*, 635 N.Y.S.2d 370, 371 (1995) ("Plaintiff did not release the Country defendants from their obligations under those agreements and, therefore, the Country defendants remain

liable to perform those obligations following the assignment."); *Toroy Realty Corp.*, 493 N.Y.S.2d at 802; *Goldome v. Bonuch*, 493 N.Y.S.2d 22 (N.Y. App. Div. 1985); *Halbe v. Adams*, 158 N.Y.S. 380 (N.Y. App. Div. 1916).

### 1.      Plaintiffs Did Not Release Hello From Its Contractual Obligations

Hello does not argue that Plaintiffs expressly released it.  Indeed, there is no basis for such a contention.  Therefore, Hello could not be discharged and released from liability to perform its contractual obligations unless the assignment was part of a novation.  *See Wang v. Chen*, No. 89 Civ. 8319 JSM, 1992 WL 7840, at *5-6 (S.D.N.Y. Jan. 10, 1992); *S&L Paving Corp. v. MacMurray Tractor, Inc.*, 61 Misc. 2d 90, 93, 304 N.Y.S.2d 652, 657 (Sup. Ct. 1969).

### 2.      There Has Been No Novation Of The 2005 Author Deal Memo

Hello cannot point to any novation releasing it from its obligations to Plaintiffs.  A novation requires (1) a valid previous obligation, (2) an agreement for a new contract, (3) the actual formation of a new contract, and (4) an intention to extinguish the old contract.  *See In re Cohen*, 422 B.R. 350, 372 (E.D.N.Y. 2010); *Flaum v. Birnbaum*, 508 N.Y.S.2d 115, 120 (N.Y. App. Div. 1986).  "[N]ovation requires the consent of *all* parties to substitute one obligation or agreement for another."  *Raymond v. Marks*, No. 96-9337, 1997 WL 345984, at *2 (2d Cir. June 24, 1997) (emphasis added).

Because a novation has the effect of extinguishing the prior contract between the parties, the existence of a novation "must never be presumed," *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 736 F. Supp. 1281, 1284 (S.D.N.Y. 1990), and the party asserting the novation's existence has the burden of proving that the subsequent agreement was intended as a complete substitute for the parties' prior agreements.  *See LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.)*, 116 B.R. 887, 907 (Bankr. S.D.N.Y. 1990); *Ventricelli v. DeGennaro*,

633 N.Y.S.2d 315, 316 (N.Y. App. Div. 1995) ("The trial record reveals that the defendant failed to sustain his burden of proof of establishing that it was the intent of the parties to effect a novation substituting a new obligor or another contract for the original obligation."); *Beck v. Mfrs. Hanover Trust Co.*, 481 N.Y.S.2d 211, 214 (Sup. Ct. 1984) ("In order to prove a novation, there must be a 'clear and definite intention on the part of all concerned that such is the purpose of the agreement. Not only must the intention to effect a novation be clearly shown, but a novation [must] never . . . be presumed.'" (quoting 22 N.Y. Jur. 2d, Contracts, § 406)).

Here, Hello did not obtain Plaintiffs' consent to substitute any other agreement for the 2005 Author Deal Memo and, as demonstrated by the cases above, Plaintiffs' consent cannot be presumed. Instead, the royalty restructuring agreement signed by Plaintiffs and 8 Legged in 2010 is expressly titled "Amendment" and, by its terms, leaves in force the preexisting agreements, including the Author Deal Memo. (2010 Amendment at 2) As the 2010 Amendment makes clear, it modified only the royalty terms of the underlying creative agreements. It did not purport to operate as a new agreement for each of its individual signatories: Bono, Edge, LOH, Inc., and Glen Berger. Accordingly, there has been no novation, and Hello has not been relieved of its contractual duties to Plaintiffs.

### 3.     The 2010 Amendment Does Not Relieve Hello Of Its Obligations Under The 2005 Author Deal Memo

Finally, Hello makes the curious argument that, because it did not sign and is not a party to the 2010 Amendment, it is relieved of its contractual duties under the 2005 Author Deal Memo. (Hello Br. at 15-16) The fact that Hello did not sign the 2010 Amendment, however, has little bearing on the crucial issue of whether Plaintiffs expressly consented to the discharge of Hello's obligations. They did not. If anything, Hello's absence as a signatory to the 2010 Amendment actually undercuts its argument. Without Hello's signature, the original parties

22

could not have agreed to release or discharge Hello's obligations under the Author Deal Memo. Indeed, that type of express agreement between obligee and obligor is precisely what a novation requires. *See, e.g.*, *Wang*, 1992 WL 7840 at *5-6.  Nothing of the kind appears in the parties' subsequent agreement.  The 2010 Amendment did not extinguish the 2005 Author Deal Memo— it merely amended its royalty terms for a limited period of time to comply with the new investors' demands related to the Musical's financial restructuring.  (Am. Compl. ¶ 64)  In fact, the 2010 Amendment expressly reaffirms Hello's continuing obligations under the 2005 Author Deal Memo, stating, "Except as expressly modified herein, the Agreements (to the extent they have been executed by the parties hereto) shall remain in *full force and effect*."

Despite New York's requirement that any novation be stated in express terms, Hello asks the Court to adopt a tortured interpretation of the parenthetical above as intending a complete discharge of Hello's obligations.  (Hello Br. at 15-16)  Yet there is no way to read this clause as expressing such an intent.  The sentence says nothing about revoking or discharging any existing agreements, nor does it mention Hello.  Instead, as is obvious from its context, the parenthetical refers to certain draft long-form agreements that had been negotiated but not yet *executed* by the producers and the Musical's creative team.  (Am. Compl. ¶ 58)  It is these agreements that the clause carved out, while expressly reaffirming the existing, signed contracts.

Moreover, Hello's suggestion that this clause somehow constitutes an unequivocal novation and release is contradicted by the text itself.  Hello's position is that this language extinguished any previous agreement unless it had been signed by the exact same parties as the 2010 Amendment.  But 8 Legged—which signed the 2010 Amendment—was not a party to the Author Deal Memo or the Berger Deal Memo when they were signed in 2005.  Yet it is these very agreements that remain "in full force and effect" according to the terms of the 2010

23

Amendment, as even Hello acknowledges.  (2010 Amendment at 1-2)  If Hello's interpretation were correct, the sentence above would both extinguish the underlying agreements—because 8 Legged was not a party to them—*and* reaffirm them.  Such a reading is nonsensical and should be rejected.  *See, e.g.*, *Currier, McCabe & Associates, Inc. v. Maher*, 906 N.Y.S.2d 129, 132 (N.Y. App. Div. 2010) (rejecting defendant's proffered interpretation because it would produce an "absurd and self-contradictory result").

The correct interpretation of the parenthetical cited by Hello is far simpler: by its plain terms, the 2010 Amendment recognized the continuing force of the earlier deal memoranda, including the Author Deal Memo.  8 Legged had taken over Hello's rights with respect to the existing agreements, as in many assignments, and the 2010 Amendment reaffirmed those agreements together with the new temporary royalty structure.  In this way, the 2010 Amendment acknowledges 8 Legged's status as a "successor" after the transfer, but an assignment—even when acknowledged—does not automatically extinguish the original obligation.  *See, e.g.*, *Iorio*, 49 A.D.2d 1008.  The mere fact that 8 Legged is described as a successor-in-interest does not imply, as Hello suggests, that Hello was completely absolved of all its duties to Plaintiffs.  If Hello is deemed liable to Plaintiffs, it may recover separately from 8 Legged for violating the terms of the assignment, but it is black-letter law in New York that Hello cannot avoid its contractual obligations where there is no release or novation.  *See, e.g.*, *Wang*, 1992 WL 7840, at *5-6.

Most importantly, Plaintiffs never intended to—and did not—discharge Hello from its obligations under the 2005 Author Deal Memo or the Berger Deal Memo.  (Am. Compl. ¶ 65) Hello, as it admits, was not a party to the 2010 Amendment, so its own intent is irrelevant to the meaning of that agreement.  (Hello Br. at 16)  There is no authority, nor does Hello cite any, for

the proposition that Hello's failure to execute the 2010 Amendment unilaterally extinguished its duties under the 2005 Author Deal Memo.

**B.      Plaintiffs State A Justiciable Breach Of Contract Claim Against Hello With Respect To Future Productions Of the Musical**

Hello argues that Plaintiffs have failed to state "an actual, present, and justiciable controversy" with respect to future productions of the Musical because, again, Hello has assigned all its rights relating to the Musical to 8 Legged.  (Hello Br. at 17)    Yet Hello's assertion that it "has no contractual or legal right to make decisions regarding the licensing of a production of the Musical in an off-Broadway venue" is flatly contradicted by the agreements in the record.  (*Id.*)  The Amended Joint Venture Agreement expressly confers upon Hello the right to participate in decisions concerning future productions of the Musical, including "with whom, where, and when."  (Amended JVA § 5.A)  More generally, for precisely the reasons reviewed above, Hello continues to exercise considerable control and influence over the Musical, including the staging and financing of future productions.  *See* Sections I.A-C, *supra*.

Hello and 8 Legged are currently preparing to produce or license to be produced precisely such presentations of the Musical in non-Broadway venues.  (Am. Compl. ¶ 179)  If Hello is financing, authorizing, or in any way assisting in the production of non-Broadway presentations of the Musical—as Plaintiffs have alleged—such actions constitute a separate and additional breach of the 2005 Author Deal Memo.  (*Id.* ¶¶ 177-79)  Altogether, these allegations make clear that Plaintiffs have stated a justiciable breach of contract claim against Hello with respect to non-Broadway productions of the Musical.

## CONCLUSION

For the reasons set forth above, Hello's motion to dismiss the Amended Complaint as against it should be denied in its entirety.

Dated: New York, New York
          August 9, 2012

                              LANKLER SIFFERT & WOHL LLP


                              By:        /s/ Charles T. Spada
                                    Charles T. Spada (cspada@lswlaw.com)
                                    Matthew G. Coogan (mcoogan@lswlaw.com)
                                    Lauren C. Freundlich (lfreundlich@lswlaw.com)
                                    Patrick C. Toomey (ptoomey@lswlaw.com)

                                    500 Fifth Avenue
                                    New York, NY 10110
                                    (212) 921-8399

                                    *Attorneys for Plaintiffs Julie Taymor and LOH, Inc.*