UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REDACTED

---

JULIE TAYMOR and LOH, INC.,

    Plaintiffs and Counterclaim-Defendants,

- against -

8 LEGGED PRODUCTIONS, LLC,
GOODBYE ENTERTAINMENT, LLC,
SAVIOR PRODUCTIONS, LLC, MICHAEL
COHL, JEREMIAH HARRIS, and GLEN
BERGER,

    Defendants and Counterclaim-Plaintiffs,

- and -

HELLO ENTERTAINMENT, LLC,

    Defendant.

11 Civ. 8002 (KBF)

ECF CASE

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO DISMISS COUNTERCLAIMS OF DEFENDANTS
8 LEGGED PRODUCTIONS, LLC (FIRST AND SECOND COUNTERCLAIMS) AND
GOODBYE ENTERTAINMENT, LLC (THIRD COUNTERCLAIM)**

LANKLER SIFFERT & WOHL LLP
Charles T. Spada (cspada@lswlaw.com)
Matthew G. Coogan (mcoogan@lswlaw.com)
Andrew S. Lee (alee@lswlaw.com)
Patrick C. Toomey (ptoomey@lswlaw.com)

500 Fifth Avenue
New York, NY 10110
(212) 921-8399

*Attorneys for Plaintiffs Julie Taymor
and LOH, Inc.*

# **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 1

    POINT I ............................................................................................................................ 1

        8 LEGGED'S BREACH OF CONTRACT CLAIM HAS NO BASIS IN THE CONTRACT ............................................................................................................ 1

        A.    8 Legged's Breach of Contract Claim Relies Exclusively on Invented and Non-Existent Provisions of the Contract ....................................................... 1

    POINT II .......................................................................................................................... 6

        8 LEGGED'S AND GOODBYE'S BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED ................................................................................... 6

        A.    The "Bookwriter" Fiduciary Duty Counterclaim Alleges No Cognizable Claim and Is Duplicative of the Contract Counterclaim ............................. 6

        B.    Goodbye Fails to Plausibly Allege the Existence or Breach of any Board Duty ................................................................................................................. 8

    POINT III ......................................................................................................................... 9

        THE SDC SETTLEMENT BARS DEFENDANTS' COUNTERCLAIMS .......... 9

CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

CASES

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ..................................................................................................5

*Katz v. Feinberg*,
    167 F. Supp. 2d 556 (S.D.N.Y. 2001), *aff'd*, 290 F.3d 95 (2d Cir. 2002) ...............................5

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991) ................................................................................................4

*Lans v. Kiska Constr. Corp.*,
    No. 96 Civ. 4114, 1997 WL 313162 (S.D.N.Y. Apr. 18, 1997) ..............................................7

*Ne. Gen. Corp. v. Wellington Adver., Inc.*,
    624 N.E.2d 129 (N.Y. 1993) ............................................................................................. 6-7

*Rowe v. Great Atl. & Pac. Tea Co.*,
    46 N.Y.2d 62 (1978) ...............................................................................................................1

*Stadt v. Fox News Network LLC*,
    719 F. Supp. 2d 312 (S.D.N.Y. 2010) .....................................................................................6

*William Kaufman Org., Ltd. v. Graham & James LLP*,
    703 N.Y.S.2d 439 (App. Div. 1st Dep't 2000) .......................................................................8

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) .....................................................................................6

STATUTES

17 U.S.C. § 101 ...............................................................................................................................4

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion to dismiss the counterclaims of defendants 8 Legged (First and Second Counterclaims) and Goodbye (Third Counterclaim).

Defendants' counterclaims for breach of contract and breach of fiduciary duty should be dismissed. They are based on nonexistent contractual provisions, conclusory allegations, and mischaracterizations of the contracts at issue in this litigation—which, on their face, belie defendants' bald assertions about them. Defendants' counterclaims are nothing more than an improper attempt at financial and reputational intimidation to dissuade Taymor from pursuing her own meritorious claims, and they should be dismissed.

## ARGUMENT

## POINT I

### 8 LEGGED'S BREACH OF CONTRACT CLAIM HAS NO BASIS IN THE CONTRACT

**A.   8 Legged's Breach of Contract Claim Relies Exclusively on Invented and Non-Existent Provisions of the Contract**

Defendants do not point to a single express obligation or promise that would support their counterclaim for breach of contract. Instead, they repeatedly fall back on the argument that plaintiffs breached "implicit" or "implied" terms of the Author Deal Memo, or that defendants "understood" the written contracts to mean something different than what they say. (Def. Br. 3-4, 8) But defendants cannot overcome a motion to dismiss simply by alleging implied terms or unexpressed "understandings" that appear nowhere in the parties' agreement. *See Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 72 (1978) ("[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include."). The mere allegation that additional terms were "implicit" or

"understood" is not enough to raise a plausible claim or create an issue of fact requiring discovery.

Curiously, defendants argue that plaintiffs seek to add terms to the contract when, in fact, it is exactly the opposite. (Def. Br. 7) Defendants argue that the one-page agreement imposed on Taymor and LOH a laundry list of additional "implicit" duties: (i) to physically put pen to paper, despite the fact that Taymor had a co-author; (ii) to permit the producers to dictate changes to the book of the Musical, even though the agreement recognizes that Taymor retained all creative approval rights customarily belonging to authors and gave the producers no such rights; (iii) to focus the book to some unspecified degree on Spider-Man, rather than Arachne; (iv) to render a book that was subjectively determined by the producers to be "complete"; and (v) to satisfy the implied, subjective "completeness" term before preview performances began (*i.e.*, an implied "time is of the essence" clause).

Every one of 8 Legged's theories of contractual breach relies on an implied duty that appears nowhere in the parties' actual agreement. The contract must be read, however, for what it obviously is on its face: an agreement giving the producers a license to use the book co-written by Taymor and Berger, in exchange for royalties. The contract's terms simply cannot be read to give the current producer (8 Legged) any of the creative control over the book that it now wishes the original producer (Hello) had secured.

8 Legged repeatedly mischaracterizes the motion to dismiss standard to advance its argument that these implied terms, and related factual issues, preclude dismissal. The standard, however, does not require that the Court credit as true defendants' legal interpretation of the contract. (Def. Br. 6-7) The Court is entitled to examine the contract for itself, and on that basis can conclude that the agreement does not contain any of the terms 8 Legged now seeks to

invent. The meaning of the contract is a legal issue ripe for the Court's determination. No amount of imaginative pleading can alter the plain meaning of the words in the agreement.

8 Legged places great emphasis on plaintiffs' designation as "co-writer" in the Author Deal Memo, as if a number of specific duties necessarily flows from that label—including a requirement that Taymor physically "put pen to paper." (Def. Br. 4) This is a bizarre theory of breach, particularly where 8 Legged admits that Taymor had a co-writer and the contract does not specify any particular division of labor. At the same time, the producers have repeatedly affirmed Taymor's role in writing the Original Book. For instance, there is no dispute that:

- Taymor and Berger produced a book of the Musical which was used in public performances from November 28, 2010 to April 17, 2011, for which Defendant 8 Legged has paid Taymor her contractual co-bookwriter royalties. (Def. Ans. ¶ 92)

- Taymor made actual contributions to the writing of the book.[1] Indeed, Defendants concede that Taymor developed "ideas she wanted incorporated into the story" and "ma[d]e comments on Berger's work." (Countercls. ¶¶ 42, 48)

- Taymor wrote the Treatment that served as the basis for the book of the Musical. (Def. Ans. ¶ 21)

- 8 Legged has advertised Taymor as co-bookwriter of the book. (Pl. Compl. ¶¶ 83, 85, Exs. H & I; Def. Ans. ¶¶ 83, 85; http://spidermanonbroadway.marvel.com/team)

- The core of 8 Legged's counterclaims is that Taymor developed a Musical that did not follow "the original, family-friendly *Spider-Man* story." (Countercls. ¶¶ 2-3)

At most, the "co-writer/co-owner" label in the Author Deal Memo implies that Taymor and her co-author would together produce the book of the Musical—which they plainly did, as evidenced by the Original Book. It does not require anything more of Taymor, let alone impose on Taymor a duty to physically put "pen to paper," as between her and Berger. The Copyright Act, which defines the ownership rights of joint authors for copyright purposes, does not even

---

[1] In addition, Defendant Berger's Counterclaim states that Taymor participated in "telephone calls, meetings and emails" with Berger concerning the book writing, and "discuss[ed] the draft scene[s]" with Berger "over the telephone, in person or through emails." (Berger Countercl. ¶ 28)

3

include such a requirement. *See Lakedreams v. Taylor,* 932 F.2d 1103, 1108 (5th Cir. 1991) ("Authors are entitled to copyright protection even if they do not perform with their own hands the mechanical tasks of putting the material into the form distributed to the public.").[2] It would be bizarre to read the term "co-writer" as implicitly imposing a contractual duty that the Copyright Act does not itself embrace in defining authorship. In any event, it is undisputed that Taymor and Berger together wrote a book of the Musical, and that the producers for months advertised Taymor's role as co-bookwriter on an enormous billboard in Times Square. Their argument now that Taymor is in breach because she did not sit at the computer is nothing short of remarkable.

      8 Legged also argues that the contract implicitly required Taymor to make changes to the book requested by the producers. It cites no support for this bald assertion, and there is no basis for it in the contract. The plain language of the contract grants no creative control over Taymor's book to the producers, but rather specifically confirms that Taymor has "approval . . . over dispositions of rights to the Musical, and all other decisions customarily reserved to the authors of a Musical." (Countercls. Ex. 1) The Berger Deal Memo similarly reaffirms that Taymor retained "*sole and absolute discretion*" to exercise "*final approval*" over "*all*" "bookwriter related and other creative decisions for the Musical." (Countercls. Ex. 2 ¶ 11 (emphasis added)) Nothing in the contract suggests that the producers were entitled to dictate the content of Taymor's creative work, yet 8 Legged now argues that Taymor's refusal to accept their changes puts her in breach such that she owes them compensation for damages. That is not a remotely plausible reading of the agreement.

---

[2] The Copyright Act defines a work as "fixed" in a tangible medium of expression when "its embodiment in a copy . . . by *or under the authority of* the author, is sufficiently permanent . . . to permit it to be . . . reproduced." 17 U.S.C. § 101 (emphasis added).

8 Legged's vague allegations that Taymor was required to, and failed to, produce a "finished book" or one adequately focused on the "classic Spider-Man story" are also wholly conclusory and not supported by the contract.  Again, 8 Legged's argument rests on its insistence that the Court read "implicit" terms and unstated "understandings" into plaintiffs' agreement.  In contrast, the Berger Deal Memo, which was drafted contemporaneously by the same producer, sets forth a detailed provision titled "Delivery and Vesting Schedule."  (Countercls., Ex. 2 ¶ 6)  The producers' failure to put a similar requirement in Taymor's contract demonstrates that none was intended.  *See Katz v. Feinberg*, 167 F. Supp. 2d 556, 566-67 (S.D.N.Y. 2001), *aff'd*, 290 F.3d 95 (2d Cir. 2002).  8 Legged's own allegations (Countercls. ¶¶ 59, 61), as well as a plain reading of the book itself (Spada Aff., Ex. C),[3] confirm that Spider-Man was a central focus of the Musical.

If 8 Legged was not satisfied with the book, the producers had no obligation to mount it on the Broadway stage; but the contract gives 8 Legged no right to sue Taymor or LOH simply because it now complains that it did not like the book.  Even a cursory reading of the one-page royalty contract at issue demonstrates the basic nature of the deal between plaintiffs and the original producer Hello: the royalty agreement simply gave the Musical's producers a license to use a book co-authored by Taymor and her co-bookwriter in exchange for royalties.  The producers were under a duty to pay Taymor only if they chose to use the book.  The agreement cannot be read as a guarantee that plaintiffs would co-write a book to the producers' satisfaction.  The contract gives the producers no control over the creation or content of the book; rather, if the producers did not like the book for any of the reasons they now claim, they were under no

---

[3] Because the Original Book is relied upon in and integral to defendants' counterclaims, the Court is entitled to examine the Original Book to determine the plausibility of the producers' claims, including their allegation that it was not sufficiently focused on Spider-Man.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

obligation to use it. The detailed obligations that 8 Legged now seeks to impose on plaintiffs—duties to physically sit and type out a book, devote less attention to Arachne, accept changes demanded by others, and create a book that the producers deemed "finished"—appear nowhere in the contract and cannot support a counterclaim for breach of contract.

**POINT II**

**8 LEGGED'S AND GOODBYE'S BREACH OF FIDUCIARY DUTY
CLAIMS SHOULD BE DISMISSED**

A.   The "Bookwriter" Fiduciary Duty Counterclaim Alleges No Cognizable Claim and Is Duplicative of the Contract Counterclaim

Defendants 8 Legged and Goodbye attempt to defend their breach of fiduciary duty counterclaim based on Taymor's role as co-bookwriter by arguing again that factual issues preclude granting plaintiffs' motion to dismiss. They are wrong. Defendants' allegations show nothing more than a conventional business relationship governed by contract.

8 Legged acknowledges that the parties' relationship arose out of the Author Deal Memo (Countercls. ¶ 141), and has not plausibly alleged any fiduciary duty arising from that contract. "[W]here a contract governs the relationship between two commercial parties, the assumption is that there is no fiduciary relationship unless the contract provides otherwise." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 503-04 (S.D.N.Y. 2007). By its plain terms, the Author Deal Memo gave the Musical's producers a license to use a book co-authored by Taymor in exchange for royalties. None of the contract's language provides any indicia of the "higher trust" required to infer a fiduciary relationship. *See Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010) (finding insufficient facts to infer a fiduciary relationship where contractual terms were "consistent with a standard licensing agreement between two parties engaged in an arms length transaction" and did not "suggest that the parties had relations of a mutual and confidential nature"); *Ne. Gen. Corp. v. Wellington Adver., Inc.*,

6

624 N.E.2d 129, 131-32 (N.Y. 1993) (dismissing fiduciary duty claim where the agreement "contain[ed] no cognizable fiduciary terms or relationship," and holding that "[i]f Wellington wanted fiduciary-like relationships or responsibilities, it could have bargained for and specified for them in the contract").

8 Legged's conclusory invocation of the term "employee" also cannot establish a fiduciary relationship. (Countercls. ¶ 132; Def. Br. 11, 13)  Contrary to 8 Legged's assertion that "the Court must accept Defendants' allegations concerning Taymor's employment status as true for the purposes of this motion" (Def. Br. 13), the Court should not accept this conclusory label asserting a legal status, as there are no facts alleged to support it.  *See Lans v. Kiska Constr. Corp.*, No. 96 Civ. 4114, 1997 WL 313162, at *5 (S.D.N.Y. Apr. 18, 1997) (refusing to accept employment allegation where the "complaint states in conclusory terms that the DOT is [plaintiff's] 'employer,' but fails to assert any *facts* supporting the employment relationship allegation.") (emphasis in original).  The Author Deal Memo's terms contain no suggestion that an employer-employee relationship was intended, nor do defendants cite any facts to support their bald contention that Taymor was an employee.

Defendants' actual factual allegations in support of a fiduciary relationship amount to the following: that Taymor claimed to have artistic expertise, that the producers provided financial support, that Taymor exercised discretion in carrying out her duties, and that the producers discussed their future plans for the project with her.[4]  These allegations show nothing more than

---

[4] Defendants refer to "the parties' seven year relationship" as another basis for imposing a fiduciary duty (Def. Br. 14), but the parties asserting the counterclaim—Goodbye and 8 Legged—were only formed in 2009 and 2010, respectively (Def. Ans. ¶¶ 6, 8; Countercls. ¶¶ 54-57).  Taymor was removed from the production less than two years later (Countercls. ¶¶ 98-99). There is no basis for defendants' assertion that this two-year relationship gave rise to any type of special trust.

7

a conventional business relationship between an artist and producer, and fall far short of establishing a special relationship of trust and confidence giving rise to fiduciary obligations.

Finally, defendants' fiduciary duty claim must be dismissed because "[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *William Kaufman Org., Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (App. Div. 1st Dep't 2000). Here, both the source of the alleged obligations and the alleged conduct constituting the breach are the same for the contract and fiduciary duty counterclaims.[5]

### B.     Goodbye Fails to Plausibly Allege the Existence or Breach of any Board Duty

As plaintiffs set forth in their opening brief, Goodbye's counterclaim allegations purporting to unilaterally impose a fiduciary duty as a "board member" of Goodbye are woefully insufficient to state a plausible counterclaim. (Pl. Br. 17-22) Although Goodbye attempts to argue that Taymor is mischaracterizing Goodbye's pleading, Goodbye's actual allegations reveal the paltry basis for this counterclaim: they make plain that Taymor's purported designation as a board member was wholly unilateral (Countercls. ¶ 148), involved one alleged action (*id.* ¶ 153), and had an alleged duration of less than two years (*id.* ¶¶ 148, 154). Such allegations do not plausibly support a claim that Taymor owed a fiduciary duty to Goodbye.

Even if a fiduciary duty were sufficiently alleged, Goodbye fails to sufficiently allege conduct by Taymor that constitutes a breach of a board duty. (Pl. Br. 20-22) The underlying alleged conduct forming the breach—Taymor's "refus[al] to cooperate with members of the production or support changes to the show" (Countercls. ¶ 156)—has nothing to do with any alleged actions as a board member, but rather solely her alleged duties as co-bookwriter. (Pl. Br.

---

[5] *Compare* Countercls. ¶ 131-34 (alleging Author Deal Memo as the source of contractual duties) *with id.* ¶ 141 (alleging Author Deal Memo as the source of fiduciary duty), and *id.* ¶ 137 (alleging conduct as breach of contract) *with id.* ¶ 144 (alleging substantially the same conduct as breach of fiduciary duty).

20) Although Goodbye makes a vague argument that decisions concerning major revisions to the story of the show could arguably fall within the authority of the board (Def. Br. 22), the counterclaims contain no allegation that the board actually considered whether changes needed to be made to the show or that the alleged conduct by Taymor contravened any board directive. Goodbye's attempt to dress up its co-bookwriter allegations as a breach of board member duties is entirely baseless.

### POINT III

### THE SDC SETTLEMENT BARS DEFENDANTS' COUNTERCLAIMS

Defendants misrepresent the settlement they signed to conclude the SDC arbitration. Defendants claim, incredibly, that they honored the parties' agreement by simply relabeling the Collaborator Counterclaim. Yet they admit that they merely substituted the word "cooperate" for "collaborate" while pleading exactly the same facts to support a "new" counterclaim. (Def. Br. 25) But the settlement released, among other things, ███████████████████████ ███████████████████████████████████████ ███████████████████████ (Spada Aff., Ex. H, ¶ 13) (emphasis added) As a result, the facts asserted to support the Collaborator Counterclaim have been released—for any purpose. The Court should enforce the plain terms of the settlement and should dismiss the counterclaims to the extent they rely on an identical set of facts.

### CONCLUSION

For the reasons set forth herein, defendants' First, Second, and Third Counterclaims should be dismissed with prejudice.

9

Dated: New York, New York
       January 18, 2013

                      LANKLER SIFFERT & WOHL LLP

                By: _____
                      Charles T. Spada (cspada@lswlaw.com)
                      Matthew G. Coogan (mcoogan@lswlaw.com)
                      Andrew S. Lee (alee@lswlaw.com)
                      Patrick C. Toomey (ptoomey@lswlaw.com)

                      500 Fifth Avenue
                      New York, NY 10110
                      (212) 921-8399

                      *Attorneys for Plaintiffs Julie Taymor and LOH, Inc.*